(No. 15502.—Order affirmed.)

THE DEPARTMENT OF PUBLIC WORKS AND BUILDINGS,
Appellant, *vs.* OTTO W. ENGEL, *et al.* Appellees.

*Opinion filed February 17, 1925.*

1. EMINENT DOMAIN—*objector to petition is entitled to be heard notwithstanding subsequent sale of his interest.* A land owner who has filed objections to a petition for condemnation is entitled to a hearing of the objections although he subsequently sells his interest in the land, as such a conveyance affects only the question as to whom the compensation shall be paid and not the question whether the party making the conveyance is entitled to be heard.

2. SAME—*petition for condemnation of land for deep waterway must show approval of plans by Federal government.* A petition for the condemnation of land for the construction of the Illinois waterway near Utica, as provided in the Waterway act of 1919, must show, as a condition precedent to the right to file the petition, the approval of the Secretary of War and chief of engineers of the Federal government of the plans and specifications for the proposed work, as the Illinois river at said point is navigable and subject to the Federal Water Power act and other acts of Congress in regard to obstructions in navigable waters, but only those plans and specifications need be filed which affect the land involved.

3. SAME—*right to condemn land for deep waterway is not subject to approval of cities and villages along the route.* The right of the State, through the Department of Public Works and Buildings, to condemn land for the deep waterway provided in the Waterway act of 1919 is not subject to the approval of the cities and villages along the line of the waterway, and although the act requires protection of such cities against overflow and the approval of a board of arbitration of the plans and specifications where objections have been filed by said cities, such approval is not a condition precedent to the right to condemn land.

4. WATERS—*approval of both Federal and State governments is required for obstruction of navigable river.* The erection of any structure in a navigable river within the State depends upon the assent both of the Federal and the State governments.

5. SAME—*a land owner may object to obstruction of navigable stream without consent of the Federal government.* The power to change or obstruct navigable streams over which Congress has assumed jurisdiction is not acquired until the consent of the Federal

315—37

government is obtained, and whether or not such consent is obtained is not merely a question between the Federal government and the party erecting such structure or making the change, but it is a question that one whose property is affected may interpose.

APPEAL from the County Court of LaSalle county; the Hon. HARRY RECK, Judge, presiding.

EDWARD J. BRUNDAGE, Attorney General, and A. E. CAMPBELL, for appellant.

FRANK F. FOLLETT, and WOODWARD, HIBBS & POOL, for appellees.

Mr. CHIEF JUSTICE DUNCAN delivered the opinion of the court:

The Department of Public Works and Buildings, for the use of the People of the State of Illinois, on January 18, 1923, filed a petition in the county court of LaSalle county to ascertain the just compensation for, and to condemn, approximately thirty-eight acres of land situated in Utica township, LaSalle county, to be used in the construction of the Illinois waterway, as provided for in an act of the General Assembly in force July 1, 1919, entitled "An act in relation to the construction, operation and maintenance of a deep waterway from the water power plant of the Sanitary District of Chicago at or near Lockport, to a point in the Illinois river at or near Utica, and for the development and utilization of the water power thereof." (Laws of 1919, p. 978.) The land was to be used by appellant in connection with the construction of a power plant and lock and dam across the Illinois river near Utica as a part of the waterway. Appellees, Otto W. Engel, Oscar Haeberle, (successor in trust to Charles E. Hook, trustee,) J. S. Watters and B. S. Harrison, and the unknown owners and unknown persons interested in the premises sought to be taken, were made defendants to the petition. The petition contained the usual allegations as to the necessity for the taking

of the premises for the purposes aforesaid. The defendants traversed the allegations of the petition or challenged by certain objections the claim that the premises were necessary for those purposes. Engel and Haeberle, successor in trust to Charles E. Hook, severally filed eighteen objections, all of which were substantially the same. Watters and Harrison jointly filed the same objections as those aforesaid. Engel filed a further objection, numbered 19, to the effect that on September 23, 1920, he and his wife entered into a contract with the Department of Public Works and Buildings whereby the petitioner acquired an option for the purchase of the premises, providing that on payment to him and his wife of the sum of $11,319 they would convey the premises to the petitioner. On March 26, 1923, on a hearing of the objections, the court dismissed the petition. This appeal is prosecuted by the petitioner.

Before any evidence was heard on the objections appellant moved that the court first hear evidence on the question of ownership of the land involved, alleging as a reason therefor that it might appear that one or more of the appellees who had filed objections had sold his or their interests in the property since the petition was filed, and for that reason would have no interest in the property that would permit the interposing of objections. The court overruled the motion, but at the conclusion of the hearing on the objections found that the title to the land at the time the petition was filed was in Engel. The evidence disclosed on this question that Engel had, after the petition was filed and before the hearing, made a deed to the land to Watters and Harrison. Appellant's contention that the trial court erred in overruling its motion to hear further evidence on the question of title cannot be sustained. In a condemnation proceeding the rights of the parties are fixed at the time the petition is filed. Engel had the right to file legal objections, and to be heard on them, irrespective of the question whether or not he had conveyed the land after the peti-

tion was filed. Such a conveyance would affect only the question as to whom the compensation should be paid, but not the question whether or not the party making the conveyance was entitled to be heard. *City of Chicago* v. *Collins,* 302 Ill. 270; *Dowie* v. *Chicago, Waukegan and North Shore Railway Co.* 214 id. 49; *Chicago, Evanston and Lake Shore Railroad Co.* v. *Catholic Bishop,* 119 id. 525.

Of the eighteen objections filed by the objectors, the first eight raised the question of the constitutionality of the act entitled "An act in relation to the construction, operation and maintenance of a deep waterway from the water power plant of the Sanitary District of Chicago at or near Lockport, to a point in the Illinois river at or near Utica, and for the development and utilization of the water power thereof," approved June 17, 1919,—the act under which appellant claims the right of condemnation in this case. These eight objections were later withdrawn, and on motion of appellant objections 10 and 11 were stricken from the files. Objection 9 is, in substance, that the taking of the land is not necessary to the construction of the waterway and that the taking thereof is wholly excessive. Objection 15 is to the effect that the land described in the petition is servient to the other portions of the farm, and that unless and until the plans and specifications for the construction of the waterway are presented to the court and filed in this proceeding the defendants will not be advised as to what damage, if any, will be caused to the land that is either taken or not taken from the farm. Objection 16 is that the land described in the petition is servient to the other portions of the farm, and that unless and until the petitioner presents to the court and files in the cause plans and specifications under which the public improvement is to be made, approved by the Secretary of War, the chief of engineers of the United States, and also approved in accordance with section 17 of the act under which this proceeding to condemn is brought, appellees will be unable to make or file

any claim or claims for damages of any kind, either to land taken or not taken.   Objection 17 is that no necessity exists for the taking of the land for the purposes aforesaid, for the reason that the route of the waterway from the water power plant of the Sanitary District of Chicago at or near Lockport to a point in the Illinois river at or near Utica has never been fixed or located either by a legislative act or by the Department of Public Works and Buildings. Objection 18 is that appellant and Engel agreed upon compensation for the land, and that appellant had full power and authority to agree upon the compensation and that Engel was under no legal disability at the time he made the agreement with appellant.   Objection 19 sets up the option or contract by which the agreement was made that is referred to in objection 18, which option contract has already been stated.

In the view that we take of the case it is only necessary at this time to pass specifically and fully upon the three remaining objections filed by the objectors.   Objection 12 is in substance the following:   That the land described in the petition is located on or near the Illinois river at or near Utica; that the Illinois river at said land is a navigable river of the United States; that no dam, lock or other obstructions may be placed in that river until the plans and specifications for the same and for all other obstructions and accessory works, together with drawings, maps and surveys thereof, have been submitted to and approved by the Secretary of War and the chief of engineers; that in the construction, maintenance, operation or repair of the waterway and its appurtenances, as specified in the petition, it is and will be necessary to erect, construct and maintain dams, locks and other obstructions, together with accessory works, in the river at said point and elsewhere; that it is not necessary to take said land for the construction, maintenance, operation or repair specified in the petition until the maps, plans, specifications and surveys therefor, ap-

proved ·by the Secretary of War and the chief of engineers, have been filed in the proceeding. Objection 14, so far as it is related to objection 12, is, that the necessity for taking or damaging the land described in the petition for the construction, maintenance, operation or repair of a waterway and its appurtenances, as specified in the petition, cannot be determined by the defendants or by the court unless and until the petitioner presents to this court, and files, plans and specifications of the public improvement to be made, approved by the Secretary of War and the chief of engineers of the United States, and it alleges that appellant has not complied with such conditions. The issue made upon these two objections is a preliminary one to be decided by the court, and the burden is upon the petitioner to prove that it has complied with the conditions set forth in these objections, if they are legal objections that must be sustained. *City of Chicago* v. *Lehmann,* 262 Ill. 468; *O'Hare* v. *Chicago, Madison and Northern Railroad Co.* 139 id. 151.

Appellant offered evidence that the land to be taken was to be used for the location of a lock and an embankment to retain the head waters in the upper pool at this lock, for the location of a highway, for the disposition of the spoils taken from the excavation for the lock and dam and the headworks for the power plant, and for the location of residences for the attendants at the water power plant, the lock and dam, and of other buildings, and that this lock, dam, power plant, etc., were to be erected as a part of the waterway authorized by the Waterway act. Section 7 of that act grants appellant the right of eminent domain in the following language:

"Sec. 7. Subject to the conditions and limitations prescribed by this act, and subject to any conditions and limitations which the Federal government or the officers thereof may lawfully impose, the Department of Public Works and Buildings shall have power:  *  *  *

"(8) To acquire by condemnation under the eminent domain laws of this State all property necessary to be taken or damaged for the construction, maintenance, operation or repair of the waterway and its appurtenances."

Several laws have been passed by Congress prohibiting obstructions in the navigable waters of the United States without the consent of Congress and the approval of the plans for such obstructions by the chief of engineers and the Secretary of War of the United States. Section 9 of the act of March 3, 1899, passed by Congress, provides as follows: "It shall not be lawful to construct or commence the construction of any bridge, dam, dike or causeway over or in any * * * navigable river or other navigable water of the United States until the consent of Congress to the building of such structures shall have been obtained and until the plans for the same shall have been submitted to and approved by the chief of engineers and by the Secretary of War: *Provided,* that such structures may be built under authority of the legislature of a State across rivers and other waterways the navigable portions of which lie wholly within the limits of a single State, provided the location and plans thereof are submitted to and approved by the chief of engineers and by the Secretary of War before construction is commenced: *And provided, further,* that when plans for any bridge or other structure have been approved by the chief of engineers and by the Secretary of War, it shall not be lawful to deviate from· such plans,· either before or after completion of the structure, unless the modification of said plans has previously been submitted to and have received the approval of the chief of engineers and of the Secretary of War." (10 U. S. Comp. Stat. 1916, sec. 9971.)

The pertinent provision of the Federal Water Power act passed by Congress June 10, 1920, is as follows: "The commission is hereby authorized and empowered * * * (*d*) to issue licenses * * * to any State or municipal-

ity for the purpose of constructing, operating and maintaining dams, water conduits, reservoirs, power houses, transmission lines, or other project works necessary or convenient for the development and improvement of navigation and for the development, transmission and utilization of power across, along, from or in any of the navigable waters of the United States: * * * *Provided further,* that no license affecting the navigable capacity of any navigable waters of the United States shall be issued until the plans of the same or other structures affecting the navigation have been approved by the chief of engineers and the Secretary of War." (3 U. S. Comp. Stat. 1923, sec. 9992¼c.)

The effect of this legislation is to make the erection of any structure in a navigable river within the State depend upon the assent of both the Federal and the State governments. (*Cummings* v. *City of Chicago,* 188 U. S. 410, 23 Sup. Ct. 472.) The Illinois Waterway act, in section 7, gives the Department of Public Works and Buildings authority to make application to the Federal government for all necessary permits. There can be no question (appellant admits it) that it will be necessary that the plans and specifications of the works to be erected at the location of the land described in the petition be submitted to and approved by the chief of engineers and the Secretary of War of the United States before the work of construction is commenced. The act under which appellant is acting recognizes that fact and that the Illinois river is a navigable river.

In the case of *Minnesota Canal and Power Co.* v. *Pratt,* 101 Minn. 197, 112 N. W. 395, the identical question now before us was presented to the Supreme Court of Minnesota. In that case a public utility company was authorized by the State to exercise the power of eminent domain in aid of an enterprise which required the construction of dams, locks, etc., in navigable waters within that State. The company undertook to condemn land to be used in con-

nection with this project and filed its petition, which showed that the consent had not been obtained of the chief of engineers and the Secretary of War to the obstruction of the navigable waters involved. The court held that the petitioner could not exercise the right of eminent domain in furtherance of an enterprise involving an interference with navigable waters within the State without having first procured the approval of its plans by the Federal authorities.

Appellant relies upon the cases decided by this court holding that it is not necessary for a railroad company to obtain the consent of a city to the construction of a railroad in its streets and alleys before the company can condemn property for the construction of the road. Those cases are to be, and must be, distinguished from the one now before us, in that the authority to build a railroad through a city is obtained wholly from the State and not from the city. It is necessary to get the consent of the city to locate the tracks in its streets, but such consent amounts to a license to use the streets and does not give the company any additional right or power to build a railroad. This court has decided that the power to change, alter or obstruct navigable streams over which Congress has assumed jurisdiction is not acquired until the consent of the Federal government thereto is obtained, and that whether or not such consent is obtained is not merely a question between the Federal government and the party erecting such structure or making the change in a navigable river, but it is a question that one whose property is affected may interpose. (*City of Chicago* v. *Law,* 144 Ill. 569.) As it requires in this case both the consent and authority of the State and the Federal governments to construct and place an obstruction in the Illinois river, we must hold that such right and power have not been obtained by appellant, and will not be obtained until consent and authority are obtained from both the State and Federal governments. Appellant having failed to show such authority and consent

from the governments the court properly dismissed its petition on that ground.

Objection 13 and part of objection 14 raise the question whether or not appellant may condemn property to be used in connection with the waterway before the plans and specifications therefor have been perfected and submitted to the cities and villages along the line of the waterway and approved by them, as provided by section 17 of the Waterway act. That section provides that when the plans and specifications for the construction of the waterway and its appurtenances shall have been perfected they shall be submitted to the city councils and village boards of the respective cities and villages along the line of the waterway before any work or construction is commenced; that if no objections are filed with the Department of Public Works and Buildings within thirty days after such filing the construction work shall be prosecuted in accordance with the plans and specifications filed; that if within such time any city council or village board files objections thereto, in writing, with the Department of Public Works and Buildings on the ground that the plans and specifications do not (*a*) provide for proper and adequate protection of such city or village against damage from overflow or flood waters; or (*b*) do not provide adequately for the altering, re-building or re-constructing of drainage or sewer systems or other public works or bridges and approaches which will be destroyed or materially interfered with by such improvement; or (*c*) do not provide for the proper location of a public landing place, in case the Department of Public Works and Buildings shall, in its discretion, provide for a public landing in such city or village; then the Department of Public Works and Buildings shall amicably adjust any differences that may exist to the satisfaction of all parties. The section then further provides, in substance, that if the parties cannot amicably adjust their differences such differences are to be settled by a board of arbitration. The act provides

for the selection of an arbitration board, and that the plans and specifications finally approved by a majority of such board shall be the plans and specifications in accordance with which such work shall be constructed.

Under the provisions of section 17 it is not within the right or power of any city or village to prevent the construction of the waterway and its appurtenances or any part thereof. The act does not even require the consent of any city or village, or a license therefrom, to construct the waterway and its appurtenances, but appellant is authorized to construct the same along or at any city in accordance with the original plans or with the plans finally approved by the board of arbitration. In other words, the right or authority to construct the waterway according to any plans or specifications comes entirely from the State and Federal governments and in accordance with the legislation enacted by the State and by Congress, respectively. This court has frequently held that while a railroad corporation must have the consent of a city council to cross one of its public streets, and the consent of such city council and of the owners of property representing more than one-half of the frontage along any public street to pass through the public streets of any city, still the obtaining of such consent is not a condition precedent to a condemnation proceeding by the railroad corporation, as such consent can be obtained after the condemnation as well as before. (*Suburban Railroad Co.* v. *Metropolitan Elevated Railroad Co.* 193 Ill. 217; *Chicago, Burlington and Quincy Railroad Co.* v. *Abens,* 306 id. 69.) Under those rulings the court should have overruled these two objections.

As to objection 16, appellees would under the same be entitled to have appellant present and file the plans and specifications for the construction of the waterway and its appurtenances after such plans and specifications had been approved by the government authorities, but such plans and

specifications should be limited to the portion of the waterway the construction of which will affect the land sought to be condemned. No land owner whose land is to be condemned would be entitled to plans and specifications of the entire route of the waterway or of any portion thereof not directly affecting or bearing upon the question of damages to the land taken and land adjoining that taken and belonging to such owner.

Objection 17 should have been overruled by the court. The Waterway act has in sections 1 and 2 prescribed the route of the waterway. No changes are to be made in this route except by the Department of Public Works and Buildings, which is granted authority by the act to deviate from the route specified in the act if in its judgment the utilization of sections of the Illinois and Desplaines rivers is not practicable or feasible. Appellant will have the option to proceed to construct the waterway on the route named in the act unless it should elect to make the changes designated by the statute after it has obtained the proper consent and authority of the governmental authorities.

Objections 18 and 19 should have been overruled. The option contract and agreement were mutually abandoned by both parties by consent. Appellant finally notified Engel that it would not take the land and pay $300 an acre for it, and it offered to submit the question as to what amount should be paid for the land to arbitration. Engel refused to do this. He finally inquired of the department if it was going to take the land at the price named in the option, and was informed, in substance, that it would not do so. Engel then said he wanted to sell the land, and informed appellant that the State could get it from the purchaser as well as from him. A short while thereafter he sold and deeded the land to Watters and Harrison, and no mention of the option contract was made in his contract with them.

For the reasons aforesaid the court properly sustained objection 12 and the first part of objection 14.

The order of the court dismissing the petition is affirmed.

*Order affirmed.*