The Duck Island Hunting and Fishing Club *et al.* Appellees, *vs.* The Edward Gillen Dock, Dredge and Construction Company *et al.* Appellants.

*Opinion filed April 21, 1928.*

1. Waters—*Illinois river is a navigable "stream" within meaning of Rivers and Lakes Commission act.* The Illinois river is a navigable stream, and is within the definition of a "stream" in the Rivers and Lakes Commission act.

2. Drainage—*when contract of drainage district is void under Rivers and Lakes Commission act—dissolution.* Where the construction of a proposed levee in a drainage district, as originally planned, affects the carrying capacity of a navigable stream within the meaning of the Rivers and Lakes Commission act, and where a change in the plans to meet the requirements of the Department of Public Works and Buildings and of the Secretary of War requires an increased assessment, which is denied by the county court because it exceeds the benefits, a contract for the work as originally planned is void and does not preclude subsequent dissolution of the district, notwithstanding a sub-contractor claims to have expended money in building a dredge to do the work and that the district consented to the making of the sub-contract.

3. Same—*contractor is presumed to have knowledge of existing statutes as to authority of drainage district.* A contractor contracting to do work for a drainage district is presumed to have knowledge of the provisions of existing statutes limiting the power of the district to contract.

4. Same—*section 29a of Rivers and Lakes Commission act does not delegate judicial power.* The power conferred by section 29a of the Rivers and Lakes Commission act on the Department of Public Works and Buildings to ascertain the effect on streams of the construction of the work of drainage districts and to approve plans for such work does not violate the constitution as conferring judicial power, as the department cannot act arbitrarily but its orders must be lawful and reasonable and are subject to review by the courts.

Appeal from the County Court of Fulton county; the Hon. J. D. Breckenridge, Judge, presiding.

MILLER, ELLIOTT & WESTERVELT, T. E. BOTTENBERG, and B. O. WILLARD, for appellants.

GLENN RATCLIFF, BURNETT M. CHIPERFIELD, LYMAN LACEY, JR., CLAUDE E. CHIPERFIELD, and ROBERT B. CHIPERFIELD, for appellees.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

The appellants, the Edward Gillen Dock, Dredge and Construction Company, a corporation, and H. J. Sternberg, doing business as the Sternberg Dredging Company, have perfected this appeal from the order of the county court of Fulton county dissolving and abolishing the Wakonda Drainage and Levee District, of said county.

The Wakonda Drainage and Levee District was organized by the county court of Fulton county by an order entered on June 26, 1919, and plans and specifications for the work to be done in the district were approved at the same time. In May, 1922, an assessment in the amount of $385,-682.48 was levied against the lands in the district for the purpose of doing the proposed work. On June 7, 1922, after advertising and receiving bids according to law, the commissioners of the district awarded a contract for the construction and performance of the work in the district to appellant the Edward Gillen Dock, Dredge and Construction Company, which on September 18, 1922, awarded a sub-contract for the ditches of the district to appellant Sternberg. The sub-contract was made with the consent of the commissioners of the district but the district was not a party to it.

The district is located on the west side of, and bordering on, the Illinois river, in Fulton county, and embraces 6881.11 acres of land, the greater portion of which consists of lakes and submerged lands connected with and open to the main channel of the Illinois river. Numerous small streams flow into the lakes in the district. The work pro-

posed to be done was the construction of a combined system of levees and ditches and a pumping station, including a levee along the west bank of the Illinois river. After the contracts above mentioned had been entered into and an attempt was being made to sell bonds of the district, the commissioners were informed that the Department of Public Works and Buildings of the State had objections to the work being done in accordance with the proposed plans. By reason of the objections it was not possible to sell the bonds of the district. The commissioners of the district then began negotiations with the division of waterways of the Department of Public Works and Buildings for an approval of the plans, but that department positively refused to approve the plans of the district for the work. The department insisted that the levee along the Illinois river side of the district should be set farther back from the river. After several conferences an agreement was reached by which the· Department of Public Works and Buildings agreed to approve modified plans for the work of the district, by which the proposed levee along the Illinois river side of the district was to be located from 200 to 300 feet farther away from the river than its proposed location according to the original specifications. A written permit was issued for the construction of the work in accordance with the modified plans by the department. It appears that the State department co-operated with the United States engineers in considering the matter of the permit for the work of the district, and that on March 24, 1924, the Secretary of War of the United States also issued his permit for the construction of the work according to the modified plans approved by the State department.

The commissioners of the drainage district at the November term, 1924, of the county court of Fulton county, presented their petition asking that the plans for the work of the district be amended to conform to the plans as approved by the Department of Public Works and Buildings

of the State and the Secretary of War of the United States, and asking for the levy of a special assessment of $105,-836.16 to meet the additional cost of doing the work in accordance with the amended plans. Certain of the land owners of the district appeared and objected to the approval of the amended plans and the levying of the additional assessment, alleging that the cost of the work under the amended plans would exceed the benefits derived therefrom by the district. The Edward Gillen Dock, Dredge and Construction Company was made a party to that proceeding in the county court. It demurred to the petition on the ground, among others, that the court had no power to cancel its contract with the district, and the demurrer was sustained. The petition was amended, in which, as amended, it was averred that after the letting of the contract, and during the pendency of the sale of the bonds issued to pay for the work on the contract, the Department of Public Works claiming to have jurisdiction over the plans and specifications and method of doing the work, and the War Department of the Federal government also claiming to have jurisdiction over such work, notified the commissioners that they were without authority to construct any work or negotiate the sale of any bonds until such time as the plans and specifications of the district had been submitted to and approved by them. It was further averred in the amended petition that the petitioners disputed the jurisdiction of the State and Federal departments and attempted to proceed with the sale of the bonds, whereupon the Department of Public Works communicated with the bond brokers and notified them that the department had jurisdiction over the district; that the district had no authority to issue bonds or make the improvement until such plans had been approved, etc.; that the department had also notified the petitioners not to allow the contractors to proceed with the work, and threatened that if they did so proceed without approval by the department of the plans it would bring suit to stop the work, etc.

The county court, after a hearing at its December term, 1924, found that the cost of the work under the amended plan would exceed the benefits to the district and dismissed the petition. The Gillen Company appealed from the judgment of the county court denying its motion to be dismissed from the case, and the judgment of the county court was reversed by this court with a finding to the effect that the Gillen Company was in no way bound by the decision of the county court, and that the county court should have allowed its motion to be dismissed out of the case. *In the Matter of Wakonda Drainage and Levee District,* 318 Ill. 241.

The petition to have the district dissolved and abolished, which was signed by the owners of all of the land in the district except ten acres, was filed in the county court of Fulton county on June 16, 1926. The petition alleged the facts stated above, and further alleged that the construction of the work of the district under the original plans would result in an increased flow of water in the Illinois river and would narrow the channel and lessen the carrying capacity of the river; that the contract of the district with the Gillen Company was null and void because the plans for the work to be done under that contract had not been approved by the Department of Public Works and Buildings of the State of Illinois and the Secretary of War of the United States; that no part of the work of the district had been constructed; that there was no indebtedness of the district, and that the cost of the dissolution of the district had been advanced and paid to the treasurer of the district. The petition prayed for the abandonment and abolition of the district and for its dissolution, and appellants were made parties to it. After motions for a change of venue and to dismiss the petition had been overruled appellants filed their separate answers to the petition, in which they set up their respective contracts for the work of the district; denied the invalidity of the contract of the district for the construction of the work; denied the jurisdiction of the Department of

Public Works and Buildings of the State of Illinois and of the Secretary of War of the United States over the work; alleged that the statute requiring drainage districts to submit their plans of work which will increase the flow of water or involve any change or work in or improvement of any of the streams of this State to the Department of Public Works and Buildings for its approval before undertaking such work is unconstitutional and void; denied that none of the work of the district had been constructed and denied that the district owed no debts, and prayed that the petition be dismissed. After a hearing on the petition and the answers of appellants the court found that the contract of the district with the Gillen Company was not a legal contract and was void; that the district was not a party to the contract of Sternberg; that neither of appellants had done any work in the district and that there was no indebtedness of the district. The court granted the prayer of the petition and entered an order dissolving and abolishing the district, from which order this appeal is perfected.

The proof showed that in times of high water the Illinois river would extend back inside the proposed location of the levee under the original plans of the district, four or five miles; that the construction of the levee would cut off the flowing area of the river in high water, and that for that reason the plans were not approved by the Department of Public Works and Buildings. It also appears that none of the proposed work of the district has ever been constructed, although Sternberg testified that he had expended $30,000 in constructing a dredge to be used in doing the work covered by his sub-contract. The evidence also showed that each of the appellants had filed suit against the district in the United States district court for damages for breach of their respective contracts, which suits were pending and undetermined at the time of the hearing in the county court.

The prayer of the petition for dissolution was that the district might be abolished and dissolved either in accord-

ance with the provisions of section 44 of "An act to provide for the construction, reparation and protection of
drains, ditches and levees, across the lands of others, for
agricultural, sanitary and mining purposes, and to provide
for the organization of drainage districts," approved and in
force May 28, 1879, (Smith's Stat. 1927, chap. 42, p. 1078;
Cahill's Stat. 1927, chap. 42, par. 44;) commonly called
the Levee act, under which the district was organized, or
in accordance with the provisions of "An act to provide
for the dissolution of drainage districts," in force July 1,
1889. (Smith's Stat. 1927, chap. 42, par. 198; Cahill's
Stat. 1927, chap. 42, par. 240.)

Under section 44 of the Levee act, as amended in 1919,
the whole system of the proposed work of a drainage district may be abandoned and the district abolished "at any
time before the contract for the construction of the proposed work shall have been made." Under the act providing for the dissolution of drainage districts a district may
be dissolved where no indebtedness of such district may exist and the costs of such dissolution have been advanced.

The contention of appellants is that the contract of the
district with the Gillen Company is valid and constitutes a
binding obligation of the district, and that, therefore, it was
error for the county court to order the district abolished
and dissolved.

Section 10 of the act of March 3, 1899, passed by Congress, reads as follows: "The creation of any obstruction
not affirmatively authorized by Congress, to the navigable
capacity of any of the waters of the United States is hereby
prohibited; and it shall not be lawful to build or commence
the building of any wharf, pier, dolphin, boom, weir, breakwater, bulkhead, jetty, or other structures in any port, roadstead, haven, harbor, canal, navigable river, or other water
of the United States, outside established harbor lines, or
where no harbor lines have been established, except on plans
recommended by the chief of engineers and authorized by

the Secretary of War; and it shall not be lawful to excavate or fill, or in any manner to alter or modify the course, location, condition, or capacity of, any port, roadstead, haven, harbor, canal, lake, harbor of refuge, or inclosure within the limits of any breakwater, or of the channel of any navigable water of the United States, unless the work has been recommended by the chief of engineers and authorized by the Secretary of War prior to beginning the same." (10 U. S. Comp. Stat. 1916, sec. 9910.)

Sections 18, 23 and 29a of our statute entitled "An act creating a rivers and lakes commission for the State of Illinois, and defining the duties and powers thereof," in force July 1, 1911, as amended in 1919, (Smith's Stat. 1927, chap. 19, pars. 65, 70, 78; Cahill's Stat. 1927, chap. 19, pars. 76, 81, 90;) are also pertinent to this inquiry, to-wit:

"Sec. 18. It shall be unlawful to make any fill or deposit of rock, earth, sand, or other material, or any refuse matter of any kind or description, or build or commence the building of any wharf, pier, dolphin, boom, weir, breakwater, bulkhead, jetty, or other structure, or to do any work of any kind whatsoever in any of the public bodies of water within the State of Illinois, without first submitting the plans, profiles, and specifications therefor, and such other data and information as may be required, to the Department of Public Works and Buildings of the State and receiving a permit therefor signed by the director of said department and authenticated by the seal thereof; and any person, corporation, company, city, or municipality, or other agency, which shall do any of the things above prohibited, without securing a permit therefor as above provided, shall, upon conviction thereof, be fined in a sum not exceeding five thousand dollars or imprisoned in the county jail not exceeding one year, or may in the discretion of the court be punished by both fine and imprisonment. Any structure, fill, or deposit erected or made in any of the public bodies

of water of this State, in violation of the provisions of this section, is hereby declared to be a purpresture and may be abated as such at the expense of the person, corporation, company, city, municipality, or other agency responsible therefor. * * * Wherever the terms public waters, public bodies of water, or streams and lakes are used or referred to in this act, they shall be construed to mean all open public streams (except as to any sanitary district channel now constructed or being constructed) and lakes capable of being navigated by water craft, in whole or in part, for commercial uses and purposes, and all lakes, rivers, and streams which in their natural condition were capable of being improved and made navigable, or that are connected with or discharge their waters into navigable lakes or rivers within, or upon the borders of the State of Illinois, together with all bayous, sloughs, backwaters, and submerged lands that are open to the main channel or body of water and directly accessible thereto.

"Sec. 23. It shall be the duty of the Department of Public Works and Buildings * * * to prevent the carrying capacity of streams to be limited and impaired by fills, deposits, obstructions, encroachments therein or bridges over same, to an extent where the same cannot safely dispose of the flood waters which may naturally, lawfully and properly be discharged therein. * * * It shall be unlawful for any person, persons, corporations, counties, cities, municipalities, or other agency to make any fill, deposit or encroachment in, or erect any bridges, over any of the streams of this State, until plans, profiles and specifications, and other data which may be required, have been first filed with the said Department of Public Works and Buildings of this State, and a written permit received therefor. * * *

"Sec. 29a. Before any drainage district now or hereafter organized in this State shall undertake any work which will increase the flow of water to be discharged into any of the streams of this State or which will involve any change

330—9

in the natural course of any stream, work therein or improvement thereof, such district or districts shall submit the proposed plans for such work to the Department of Public Works and Buildings for approval. When such plans are submitted it shall be the duty of said department to investigate conditions and have engineering check and review of said plans, and may require such changes and modifications as may be found necessary to protect public interests in said streams. If said department finds public interests are protected and said plans will not result in avoidable damage from flood conditions, it shall approve said plans and issue permit for the work."

The Illinois river is a navigable stream, (*Department of Public Works* v. *Engel,* 315 Ill. 577; *Brockschmidt* v. *Sanitary District,* 260 id. 502;) and is within the definition of "stream" in the Rivers and Lakes Commission act above quoted. The proof showed that the construction of the proposed work of the district, particularly the levee along the Ilinois river, in accordance with the original plans of the district would narrow the river, increase the flow of water therein and affect its capacity to carry flood waters. Therefore the district was prohibited by law from constructing said work before it had secured a permit for its construction from the Department of Public Works and Buildings of the State of Illinois and from the Secretary of War of the United States.

Appellants take the position that while the construction of the work of the district without such permit might be prohibited, still, the making of a contract for the construction of such work is not prohibited, and they rely upon *Sproul* v. *Springman,* 316 Ill. 271, in which this court held that the provisions of section 29*a* of the Rivers and Lakes Commission act, above quoted, does not prohibit the county court from approving the plans of a drainage district before a permit is obtained from said department. In that case we said: "The requirements of said paragraph will be fully

met if the approval of the plans of the proposed district by the Department of Public Works and Buildings be had after the approval of the commissioners' report by the court, if it be approved, and after the district is organized and before the work under the plans is begun." The decision in that case, however, did not go to the extent of supporting appellants' contention in this case. The questions whether or not the county court had jurisdiction to approve the plans of the district before the issuance of a permit by the Department of Public Works and Buildings, and whether or not the commissioners of the district had the power to make a contract for the construction of such work before the issuance of such permit, are two entirely different and distinct questions. The district is prohibited from doing the work, or undertaking to do the work, before the approval of its plans by the Department of Public Works and Buildings and the Secretary of War, and in our opinion had no authority to enter into a contract for the construction of such work until the plans therefor had been approved as required by law.

In *Department of Public Works* v. *Engel, supra,* this court held that the State of Illinois had no right to condemn land for the construction of the Illinois waterway before the plans had been approved by the Secretary of War of the United States where the proposed work involved a change in the Illinois river. In that case this court said: "This court has decided that the power to change, alter or obstruct navigable streams over which Congress has assumed jurisdiction is not acquired until the consent of the Federal government thereto is obtained, and that whether or not such consent is obtained is not merely a question between the Federal government and the party erecting such structure or making the change in a navigable river, but it is a question that one whose property is affected may interpose. (*City of Chicago* v. *Law,* 144 Ill. 569.) As it requires in this case both the consent and authority of the State and

the Federal governments to construct and place an obstruction in the Illinois river, we must hold that such right and power have not been obtained by appellant, and will not be obtained until consent and authority are obtained from both the State and Federal governments."

At the time the supposed contract of the drainage district in this case with the Edward Gillen Dock, Dredge and Construction Company was made the statutes above quoted were in force and effect, and that company is presumed to have known their provisions and to have had knowledge of the limitations of the power of the district to contract. (*May* v. *City of Chicago,* 222 Ill. 595; *DeKam* v. *City of Streator,* 316 id. 123.) In the case last cited this court held invalid a contract made by the board of local improvements of a city with an engineer for drawing plans of a proposed sewer system where no appropriation had been made to pay for such services. In that case we said: "A contract expressly prohibited by a valid statute is void. This proposition has no exception, for the law cannot at the same time prohibit a contract and enforce it. The prohibition of the legislature cannot be disregarded by the courts. (*Botkin* v. *Osborne,* 39 Ill. 101; *Wells* v. *People,* 71 id. 532; *Board of Education* v. *Arnold,* 112 id. 11; *Penn* v. *Bornman,* 102 id. 523; *Cincinnati Mutual Health Assurance Co.* v. *Rosenthal,* 55 id. 85; *Borough of Milford* v. *Milford Water Co.* 124 Pa. 610; *Berka* v. *Woodward,* 125 Cal. 119; *Levison* v. *Boaz,* 150 id. 185.) * * * In many other cases contracts not prohibited by the express words of a statute but in violation of its terms have been held void, and it is a well established rule that where, from a consideration of all the provisions of the statute, the legislative intention clearly appears to declare an act unlawful no contract for the performance of that act can be enforced, and the rule applies to a contract to do an act contrary to the public policy of the State.—*Shaffner* v. *Pinchback,* 133 Ill. 410; *Lake Fork Drainage District* v. *People,* 138 id. 87; *Bishop* v.

*American Preservers' Co.* 157 id. 284; *Adams* v. *Brenan,* 177 id. 194; *Douthart* v. *Congdon,* 197 id. 349."

Under the provisions of the Rivers and Lakes Commission act, above quoted, the construction of the proposed work of the Wakonda Drainage and Levee District according to its original plans, without a permit from the Department of Public Works and Buildings, is unlawful.

The contract of H. J. Sternberg was not a contract with the drainage district, although the district consented to the Gillen Company making the sub-contract with Sternberg. Since the supposed contract of the district with the Gillen Company is invalid and void, so is the contract of Sternberg invalid and void so far as the district is concerned, and it makes no difference in this case that Sternberg might have expended money in and about getting ready to perform his contract. *DeKam* v. *City of Streator, supra.*

Appellants argue that section 29a of the Rivers and Lakes Commission act is in violation of section 2 of article 2 and of article 3 of the constitution of this State. The contention is that it violates section 2 of article 2 in that no provision is made for a notice to persons interested or for an opportunity for such persons to be heard. This contention is without merit, because section 26a of the act of which section 29a is a part provides: "all orders entered by said commission shall be made only upon giving due and reasonable notice to persons to be affected thereby, or having any interest in the subject matter of such inquiry and after a hearing in relation thereto." Said section also gives any party to any proceeding before the commission, (now superseded by the Department of Public Works and Buildings,) or any party affected by an order thereof, an opportunity to appeal to and have such order reviewed by the circuit court of Sangamon county. The record in this case shows that the Gillen Company was represented at the hearings before the Department of Public Works and

Buildings concerning the plans of the drainage district, by its president, Frank Gillen.

It is contended that said section 29*a* violates article 3 of the constitution, in that it confers judicial and legislative powers on the Department of Public Works and Buildings. Appellants say it confers judicial power on said department by authorizing it to pass on the question whether the construction of the proposed work of a district will increase the flow of water to be discharged in any stream or involve any change in the natural course thereof, and establishes no rules and regulations or procedure but permits arbitrary decision by the department. In *Klafter* v. *Examiners of Architects,* 259 Ill. 15, this court held that an act of the General Assembly conferring on the executive department the power to revoke an architect's license "for gross incompetency or recklessness in the construction of buildings or for dishonest practices on the part of the holder thereof" did not delegate judicial power to the executive department. In that case this court said: "A revocation by the State Board of Examiners of Architects of appellant's license would not be the exercise by that body of judicial power. The authority to ascertain facts and apply the law to the facts when ascertained often devolves upon other departments of government than the judiciary. Judgment and discretion are required often of every public official. It would be difficult to draw the precise line separating the judicial from other departments of government. (*France* v. *State,* 57 Ohio St. 1.) No one, so far as we are aware, has ever attempted it. Official duties are, in general, classed under three heads: executive, legislative and judicial. Such classification is not exact, and the duties of many officers cannot be exclusively arranged under any of these three heads. (2 Cooley on Torts,—3d ed.—752.) Judicial power does not apply to cases where judgment is exercised as incident to the execution of ministerial power.—*Owners of Lands* v. *People,* 113 Ill. 296."

In our opinion the power conferred on the Department of Public Works and Buildings to ascertain the effect on streams of the construction of the work of drainage districts does not violate the constitution by conferring judicial power on such department. The department may not act arbitrarily. Its orders must be lawful and reasonable. Appeals may be taken from its orders to test their reasonableness to the circuit court of Sangamon county, and from that court to this court, under section 29a mentioned above. Legislative power is not conferred on the Department of Public Works and Buildings by said section by giving such department power to require changes and modifications in the plans of a drainage district, where such plans are for work "which will increase the flow of water to be discharged into any of the streams of this State or which will involve any change in the natural course of any stream, work therein or improvement thereof," and where changes and modifications are found to be necessary to protect public interests in said streams. *People* v. *Roth,* 249 Ill. 532; *Mitchell* v. *Lowden,* 288 id. 327; *Board of Education* v. *Board of Education,* 314 id. 83.

Since the supposed contract of the drainage district with the Edward Gillen Dock, Dredge and Construction Company was unlawful and void, and the sub-contract of Sternberg was also void so far as the district is concerned, the county court did not err in finding that no contract for the construction of the proposed work of the district had been made and that there was no indebtedness of the district and in ordering the drainage district abolished and dissolved.

The judgment of the county court is affirmed.

*Judgment affirmed.*