(No. 22236.—

ALLEN GREEN *et al.* Plaintiffs in Error, *vs.* THE HUTSON-VILLE TOWNSHIP HIGH SCHOOL DISTRICT No. 201 *et al.* Defendants in Error.

*Opinion filed April 21, 1934.*

P. J. KOLB, and PARKER & EAGLETON, (S. W. BAXTER, of counsel,) for plaintiffs in error.

JONES & LOWE, for defendants in error the Hutsonville Township High School District and its board of education; S. M. SCHOFIELD, C. M. PURDUNN, and COOPER, ROYSE, GAMBILL & CRAWFORD, for defendant in error the Terre Haute Trust Company.

Mr. JUSTICE SHAW delivered the opinion of the court:

This is a bill filed by complainants in their own behalf and on behalf of other interested parties, as tax-payers in Hutsonville Township High School District No. 201, in Crawford County, Illinois, to restrain the extension and collection of certain taxes for the payment of bonds and interest purporting to be obligations of the district. The bill is against the district, the members of the board of education, the county clerk and county treasurer of Crawford county. The defendant in error the Terre Haute Trust Company was allowed to intervene and has filed briefs in this court.

The facts out of which the controversy arises, as shown by the bill of complaint, to which a demurrer was sustained,

are briefly as follows: The high school district was organized about 1911, and in May of 1919, pursuant to a resolution of the board and vote of the citizens of the district, it was determined to build a school house at a cost not to exceed $40,000. The voters approved a proposition to borrow $29,700, being the limit of indebtedness of the district upon its then assessed value. After these two elections the board, without any other authority, entered into contracts for the erection of a school building at a total cost in excess of $74,000. After these contracts had been let it became possible, by reason of a change in the statutes pertaining to assessed valuations, to borrow an additional $15,000 within the constitutional limitation of five per cent upon the assessed value of the district. Another election was then held to authorize the issuance of an additional $15,000 in bonds and the proposition carried, thus giving the district the authority to issue bonds to the total amount of $44,700, this amount being a full five per cent of the assessed valuation of the district on the increased values. Out of this sum $3000 was paid for a site and $1000 for attorneys' fees, the district thus incurring a total indebtedness of $77,347.50, being $32,647.50 in excess of the amount realized from the sale of bonds and approximately the same amount in excess of the constitutional limitation of its indebtedness. The building was erected, and thereafter certain persons who claimed to be creditors of the district on account of these building operations filed five suits in the circuit court of Crawford county, each case being in assumpsit. The total sued for in the five cases amounted to $19,741.85, the claims varying in amount from $343.15 to $10,000. In each of these cases the board of education entered its appearance and confessed judgment by *cognovit* in the usual form. After 1921, when these judgments were obtained, no further action was taken until 1931, the original bond issue of $44,700 having in the meantime matured and been paid off. In August of

1931 a special election was called by the board of education to vote on a proposition to authorize the district to issue its bonds in the sum of $34,000 for the purpose of paying these judgments, with their accumulations of interest and costs. This proposition carried and the bonds were issued and sold. The intervening defendant, the Terre Haute Trust Company, is the owner of some of them.

The bill of complaint concludes in the usual form, with a suitable prayer for injunction and other relief. General and special demurrers were sustained to the bill, and complainants having elected to abide by it, it was dismissed for want of equity. This writ of error is sued out for a review of that judgment, a construction of the constitution being involved.

The plaintiffs in error contend that the bonds in question are entirely void. It is alleged in their bill of complaint that the judgments against the district were obtained by consent and collusion of the parties without the district interposing an obvious and good defense which it was its duty to interpose; that they purported to allow compensation on account of totally void contracts without informing the court as to the nature of the transaction and without knowledge of the tax-payers, and that they are totally void for collusion and fraud. The defendant in error the Terre Haute Trust Company contends that the question of the indebtedness of the district is *res judicata* by reason of the judgments; that the judgments cannot be attacked collaterally; that the allegations as to collusion and fraud are not sufficient, and that the bonds are a valid refunding of an existing indebtedness. They also rely upon the Statute of Limitations but without any argument sufficient to merit attention.

Section 12 of article 9 of the constitution of 1870 provides that no school district or certain other municipal corporations shall be allowed to become indebted in any man-

ner or for any purpose in an amount, including existing indebtedness, in the aggregate exceeding five percentum of the value of the taxable property therein, as determined by the last assessment prior to incurring such indebtedness. In discussing this constitutional prohibition this court has made itself very clear and there can be no reason for doubting our position in the matter. We have held that it makes no difference under what guise or by what sort of trick the attempt is made, an indebtedness in excess of the constitutional limit cannot be voluntarily created. It was the intention of the framers of our constitution that the property of citizens should not be burdened beyond the five per cent limitation and that no plan or scheme can be permitted to create an indebtedness in excess of that amount. (*People* v. *Chicago and Alton Railroad Co.* 253 Ill. 191; *Wade* v. *East Side Levee District,* 320 id. 396, and cases there cited.) It appears from the record in this case that the school district deliberately and intentionally attempted to create an indebtedness nearly twice that permitted by our constitution. A mere look at the facts makes it obvious that a scheme or device has here been resorted to for the purpose of burdening the tax-payers of this district with a much more expensive school house than the valuation of the district would warrant or the constitution permit. It necessarily follows that this excess of indebtedness was void *ab initio,* and the only question for determination is whether or not the judgments taken by consent were sufficient to breathe life into a totally dead transaction. It is strenuously urged that such is the fact, and some dozens of cases are cited to the general effect that if a court has jurisdiction of the parties and subject matter its judgment cannot be collaterally attacked. It is also urged that the board of education in confessing these judgments was acting on behalf of the tax-payers, and that the tax-payers were in privity with the board of education and are bound by its acts. It would be a strange rule to hold that the

board was acting for the tax-payers and in their interest when it is apparent to anyone that they were acting against the tax-payers, against their interests and in direct violation of the constitution. The authorities do not support any such unreasonable doctrine.

Going back of the judgments for a moment, we find the rule to be that a municipal corporation cannot be estopped to dispute the validity of a contract which it had no power to make. (*DeKam* v. *City of Streator*, 316 Ill. 123; *Hope* v. *City of Alton*, 214 id. 102; *Eastern Normal School* v. *City of Charleston*, 271 id. 602.) A contract expressly prohibited by law is void, and there is no exception to this rule for the reason that a law cannot at the same time prohibit a contract and enforce it. (*Duck Island Club* v. *Gillen Co.* 330 Ill. 121; *DeKam* v. *City of Streator, supra.*) We thus see that when the judgments in question were entered they were for a non-existent consideration, and it needed only a plea to that effect on behalf of the school board to have prevented their entry. The board had paid $1000 attorneys' fees in connection with this transaction, and entirely aside from that would be presumed to know the law. It would also be presumed, under normal circumstances, to do its duty, which would be to protect the interests of the tax-payers against any illegal and unjust charge. Inasmuch as the board of education deliberately incurred an indebtedness far beyond the constitutional limitation, and inasmuch as it knew it was violating the law in doing so, it is not only a fair but a necessary inference that its confession of judgment upon these claims was collusive and fraudulent, and again we find the law to be clear upon the point involved.

Regardless of the general rule that a judgment cannot be collaterally attacked and that it is conclusive and final as between the parties, there is a further rule which has been repeatedly sustained in this court, and, so far as we know, in all other courts. That rule is, that whenever a

judgment is procured through fraud and collusion for the purpose of defrauding some third person, such third person may show collaterally the fraud and collusion by which the judgment was obtained and escape the burdens and injuries thus thrust upon him. (*Atlas Nat. Bank* v. *More,* 152 Ill. 528; *Elting* v. *First Nat. Bank,* 173 id. 368; *Wing* v. *Little,* 267 id. 20; *People* v. *Chicago, Burlington and Quincy Railroad Co.* 247 id. 340; *Martin* v. *Judd,* 60 id. 78.) It is further the rule that to constitute *res judicata* it must appear that the former adjudication was upon a matter contested between the parties. (*Wadhams* v. *Gay,* 73 Ill. 415.) If a suit is devised for the purpose of having a certain judgment entered, it will not be binding upon the public or those who are not parties to the scheme adopted for that purpose. (*People* v. *Knopf,* 198 Ill. 340; *People* v. *Chicago, Burlington and Quincy Railroad Co. supra; People* v. *Illinois Central Railroad Co.* 298 Ill. 516.) A tax-payer is not estopped by a consent judgment upon an unlawful contract, (*People* v. *Illinois Central Railroad Co. supra,*) neither can a legal liability be established by such a judgment. *People* v. *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* 271 Ill. 195, and 300 id. 368.

Upon the facts admitted by the demurrer to this bill, the original indebtedness, which was later merged in the judgments, was void and the judgments permitted to be entered thereon were also void, and for the reasons shown the tax-payers are not concluded thereby. To permit the extension and collection of a tax for the payment of the bonds and interest here in question by means of the device which has been used would be to entirely destroy the constitutional limitation upon the district's permissible indebtedness. Equity will enjoin the collection of a tax which is levied for an illegal or an unauthorized purpose or where it exceeds the amount authorized by law. (*School Directors* v. *School Directors,* 135 Ill. 464.) Upon the facts stated in the bill the tax should be enjoined.

The judgment of the circuit court is therefore reversed and the cause remanded, with directions to overrule the demurrers and for further proceedings in consonance herewith.

*Reversed and remanded.*

JUSTICES STONE and HERRICK, dissenting.