In re Estate of Victor S. Johnson, Deceased.
Curtis B. Dall, Appellant, v. Victor S. Johnson, Jr., Administrator de bonis non of Estate of Victor S. Johnson, Deceased, Appellee.

Gen. No. 44,738.

Opinion filed November 21, 1949. Rehearing denied December 2, 1949. Released for publication December 2, 1949.

HETH, LISTER & FLYNN, of Chicago, and ALEXANDER KAHN and HARRY J. PASTERNAK, both of New York City, for appellant.

W. H. F. MILLAR, of Waynesville, North Carolina, and EGBERT ROBERTSON and EDMUND L. McGIBBON, both of Chicago, for appellee; ROBERTSON & McGIBBON, of Chicago, of counsel.

MR. PRESIDING JUSTICE TUOHY delivered the opinion of the court.

Plaintiff filed his claim in the probate court of Cook county against defendant Alex Thomson, administrator of the estate of Victor S. Johnson, to recover 6142.5 shares of the common stock of Tennessee Gas & Transmission Company valued at $132,831.56. The probate court dismissed the claim upon the grounds that the contract upon which it is based is invalid and void, and contrary to public policy. The circuit court, on an appeal from the probate court, held likewise, and from the judgment order of dismissal there, this appeal is prosecuted. During the pendency of the litigation the original administrator died, and Victor S. Johnson, Jr., was substituted as administrator *de bonis non.*

The questions presented arise on the face of the pleadings. The petition sets forth an agreement whereby plaintiff and decedent entered into a joint venture to promote a pipe line company for the transmission of natural gas from northern Louisiana to middle Tennessee and which contemplated the acquisition of certain natural gas interests from the Eastern Tennessee Oil and Gas Company, of which decedent was president, including natural gas interests in certain properties known as the Sunbright properties, and also the natural gas franchise for the city of Knoxville, Tennessee. The financing of this company provided

113

for an initial authorized capitalization of $150,000 of preferred stock and in excess of 90,000 shares of common stock, the latter stock to be issued as a bonus for the purchase of preferred stock in the proportion of 10 shares of common to one share of preferred. The following significant paragraph with reference to this stock appears:

"4. . . . It is further agreed between us that as a result of our joint efforts, if we can save 90,000 shares of the 'A' Corporation's common stock in connection with the raising of $75,000.00 of a $150,000.00 program, that you and I are to personally share on a fifty-fifty basis said 90,000 shares or any part thereof which we may be able to save and which stock shall accrue to us in some legal manner with a nominal consideration to meet with any existing laws of the State of Tennessee."

The agreement further specifies that the plaintiff and decedent should have the right to designate and change, to suit their convenience, the directors of the corporation to be formed except that Johnson, Dall, and one A. Faison Dixon might not be replaced. It was agreed that plaintiff's "out-of-pocket expense" amounted to $349,800 and that he was to be paid the same in the form of preferred and common stock of the contemplated corporation as he might elect. It was further provided that Dall was to be paid $1,000 a month during the organizational period by decedent and that decedent was later to be reimbursed for these advances by the corporation, and it was further agreed that the corporation would pay $100,000 to the Tennessee Natural Gas Corporation for the city of Nashville franchise and give the plaintiff the right to participate in any gas producing company thereafter organized. The petition alleges that the Tennessee Gas and Transmission Company was thereafter formed

114

with some changes in its financial structure not important here.

Although the reasons do not appear in the record, the courts below dismissed the petition presumably on the grounds that it is apparent on the face of the contract that it is void (1) as being in violation of the specific provisions of the Natural Gas Act, and (2) as being in violation of public policy in providing for a plan of organization disregarding basic principles of corporation law and the fiduciary obligations of corporate promoters and directors.

Plaintiff contends (1) that the contract did not violate the federal Natural Gas Act; (2) that the contract is not contrary to public policy because (a) each of the provisions of the contract sued on is capable of being performed in a lawful manner, (b) there is nothing inherently illegal in an agreement to elect or continue in office certain persons as directors or officers of the corporation proposed to be formed, and (c) reasonable charges and expenses of organization and similar obligations incurred by promoters, when assumed by proper corporate action, are valid corporate obligations.

It is a basic rule that a court will not lend its aid to the enforcement of a contract which is illegal or in violation of a rule of public policy. *De Kam v. City of Streator,* 316 Ill. 123; *Duck Island Hunting & Fishing Club v. Edward Gillen Dock, Dredge & Construction Co.,* 330 Ill. 121; *Lanteen Laboratories, Inc. v. Clark,* 294 Ill. App. 81.

The question then arises whether or not the contract violates the specific provisions of section 717k of the Natural Gas Act (15 USCA). This section provides:

"It shall be unlawful for any officer or director of any natural-gas company to receive for his own benefit, directly or indirectly, any money or thing of value in respect to the negotiation, hypothecation, or sale by

115

such natural-gas company of any security issued, or to be issued, by such natural-gas company, or to share in any of the proceeds thereof, or to participate in the making or paying of any dividends, other than liquidating dividends, of such natural-gas company from any funds properly included in capital account.''

■ ■ It is clear from the contract sued upon that the Tennessee Gas & Transmission Company was to carry on interstate transportation of natural gas from Louisiana to Tennessee and that Dall was to be president and a director. There seems to be no question that if the Tennessee Gas & Transmission Company was a ''natural gas company'' any receipt by its president and director Dall of anything of value for the services performed by him in selling the company's securities would be a violation of the Natural Gas Act. Plaintiff's defense rests solely upon the grounds that at time the contract was made there was no natural gas company in existence and that the statutory prohibition applies only to a natural gas company actually ''engaged in the transportation of natural gas in interstate commerce.'' We do not consider this proposition tenable. It appears to us that the clear purpose and intent of the Natural Gas Act was to prohibit an officer or director from benefiting by the sale of any rights therein. It is apparent that Dall did so intend to profit, and the fact that at the time the contract was made the corporation was not in existence in no wise changes the clear intent and purpose of the Act to prevent an overreaching of a corporation formed or to be formed. If the plaintiff's proposition were sound, it would completely nullify the statute, since all a corporation organized to be a natural gas company would have to do to render it ineffective would be to make the prohibited arrangements prior to the date of the first movement of gas in commerce. No

contract for the performance of an act in the future can be enforced if the actual performance of such an act would be a violation of a statute. *Duck Island Hunting & Fishing Club v. Edward Gillen Dock, Dredge & Construction Co., supra,* at p. 132; *De Kam v. City of Streator, supra.*

In support of the construction which counsel adopt they refer to a district court decision in the eastern district of Michigan in the case *In re Toledo Portland Cement Co.,* 156 Fed. 83. While there is language in this district court opinion in support of plaintiff's contention, the facts in the case are distinguishable; and a directly opposite conclusion, which we consider better reasoned, was reached by the circuit court of appeals for the first circuit in *White Mountain Paper Co. v. Morse & Co.,* 127 Fed. 643, in which case the court affirmed the decree of the district court. In the latter case it was urged that a corporation sought to be adjudicated a bankrupt was never "engaged principally in manufacturing," but had only taken incipient steps thereto. The court, in disposing of the contention, said (pp. 645, 646):

"It is conceded that the appellant corporation, pursuant to its charter authorizing it to manufacture pulp and paper, had expended a very large amount of money —exceeding, perhaps, $500,000—in acquiring lands and erecting buildings necessary and suitable therefor, and intended to be used for that purpose, and for no other. Nevertheless it says that, inasmuch as it had not commenced in its mills the production of either pulp or paper, or of any other article named in its charter, it was not, at the time the petition was filed against it, 'engaged' at all in manufacturing, in the statutory sense of the word. . . .

"Statutes of this general class are not construed in a literal or narrow way, but, like customs legislation,

they are held as addressing themselves to the general purpose for which they were enacted. This, in this case, is of a commercial, business character. Therefore, clearly, the expressions of the statute under consideration are to be looked at from that point of view. . . ." It was held that this corporation was engaged in manufacturing in the statutory sense of the word. Supporting this conclusion are the cases of *Phillips v. International Salt Co.*, 274 U. S. 718, and *Harmar Coal Co. v. Heiner*, 34 F. (2d) 725.

██ ██ We are of the opinion that the contract of plaintiff Dall was in violation of the entire spirit of the Act involved and the public policy declared by it. We are in accord with the statement in the case of *Dettloff v. Hammond, Standish & Co.*, 195 Mich. 117, as follows (p. 136):

"A contract which in its execution contravenes the policy and spirit of a statute is equally void as if made against its positive provisions."

In *United States v. Hutcheson*, 312 U. S. 219, where a literal interpretation of the Sherman Act was insisted upon, the court said (p. 235):

"That is not the way to read the will of Congress, particularly when expressed by a statute which, as we have already indicated, is practically and historically one of a series of enactments touching one of the most sensitive national problems. Such legislation must not be read in a spirit of mutilating narrowness."

In *Federal Deposit Ins. Corp. v. Tremaine*, 133 F. (2) 827, Justice LEARNED HAND said (p. 830):

"There is no surer guide in the interpretation of a statute than its purpose when that is sufficiently disclosed; nor any surer mark of over solicitude for the letter than to wince at carrying out that purpose be-

cause the words used do not formally quite match with it.''

The manifest congressional purpose evidenced by section 717k of the Natural Gas Act would be as certainly defeated by the issuance of stock to an officer of the company in consideration of negotiating the company's securities if this occurred the day before the first transportation of gas as if it happened the day after.

██ We are also of the opinion that the alleged contract violates public policy in providing for a plan of organization which disregards well established principles of law governing the obligations of corporate promoters and directors. We have no quarrel with the statement in plaintiff's brief to the effect that extreme care should be exercised in applying the rule of public policy to contracts freely made between competent persons and that the doctrine should be applied only in cases plainly within the reasons upon which the doctrine rests. We think, however, that the case at bar plainly comes within such doctrine.

██ ██ The shares of stock sought to be recovered by plaintiff are part of the 30,000 shares issued under a resolution of the board of directors of May 4, 1940, and are shares mentioned in paragraph 4 of the contract which evidently were ''saved'' from the bonus stock which was to be distributed to purchasers of preferred stock on a ratio of 10 common for each share of preferred purchased. Just how the shares were to be ''saved'' does not appear—but presumably at the expense of the preferred stockholders. Neither does it appear by what authority Dall and Johnson could contract to divide these 30,000 shares in derogation of the rights of all the other participants in the enterprise. The language of the resolution of May 4, 1940, asserts that the consideration for the issuance to Johnson of 30,000 shares of common stock repre-

119

sented work, money and commitments provided by him over a period of years, whereas by the language of the petition itself plaintiff entered into the alleged joint venture with Johnson some two months before the date of the resolution. It is to be considered that the resolution authorizing this payment was passed by a board of directors selected by prearrangement between decedent and plaintiff, one of the beneficiaries of the arrangement, in disregard of the clear right of stockholders to pass upon the legitimacy of the claim through directors of their own selection. The arrangement is extremely suspect and seems to us to come within the prohibition in the cases of *De La Motte v. Northwestern Clearance Co.,* 126 Minn. 197, *Gerdes v. Reynolds,* 28 N.Y.S. (2d) 622, and *Ballantine v. Ferretti,* 28 N.Y.S. (2d) 668. In the last-mentioned case it is said (p. 680):

". . . contracts by which corporate officers or directors take pay for their action as such have such harmful potentialities where there are other stock or creditor interests in the corporation that they are condemned as contrary to public policy because of their nature and general tendency, without inquiry in any given case as to whether harm in fact resulted or complaint actually is made. . . ."

 In the case at bar it was Dall's duty as president and a director of the Tennessee Gas & Transmission Company so to act that the stock to be issued to Johnson for his prior services and expenditures should be such stock, and only such stock, as was fairly compensatory for the considerations received by the company therefor. In this situation a contract looking to a fifty-fifty split of all such stock with Dall under the circumstances here existing is in our opinion violative of public policy. Furthermore, the agreement to issue such stock upon "a nominal consideration" is

not to be approved. It is elementary law of corporations that corporate stock must be issued for something the corporation receives for it. To say in a contract that stock shall be issued for a nominal consideration "in some legal manner" is indicative of an intention to reward the promoters of this enterprise without reference to any benefit to the corporation. This is particularly so when it is considered that under paragraph 2 of the alleged agreement it was provided that the joint adventurers should have the right to name the board of directors. It is well established principle that an agreement by which the selection of corporate directors is reposed in anybody except the majority of stockholders is in violation of public policy and unenforceable. *Luthy v. Ream,* 270 Ill. 170; *People ex rel. Watseka Tel. Co. v. Emmerson,* 302 Ill. 300. The plain inference to be drawn from a reading of the contract is that Dall and Johnson controlled the board of directors by this prearranged plan and voted to themselves the 30,000 shares of common stock in addition to salary and other outlays for Dall with money furnished by the general public from the sale of stock.

Plaintiff cites a number of cases to the effect that there nothing inherently illegal in an agreement to elect or continue in office certain persons as directors or officers of a corporation or corporations proposed to be formed. These cases are to be distinguished from the case at bar by the fact that in the cases cited there was being dealt with a situation of a closed corporation where the stock was substantially all owned by the officers and directors and that the stockholders united in an agreement to elect particular directors and officers; however, in the instant case it appears from the pleading that it was not only not contemplated that Johnson, Dall and Dixon should own all the stock of the proposed company, but the petition itself shows conclusively that the whole enterprise was to be fi-

nanced with money of the public to be gotten for the stock.

For the foregoing reasons the judgment order of the circuit court of Cook county is affirmed.

*Affirmed.*

NIEMEYER and FEINBERG, JJ., concur.