THE STATE EX REL. BOATMEN'S NATIONAL BANK OF ST. LOUIS V. WEBSTER GROVES GENERAL SEWER DISTRICT No. 1 of St. Louis County, BOARD OF SUPERVISORS of said District, SECRETARY-TREASURER OF BOARD OF SUPERVISORS, COLLECTOR OF REVENUE OF ST. LOUIS COUNTY, and CARL H. HOLEKAMP, F. C. E. KUHLMANN and EDWARD G. CURTIS As Members of Board of Supervisors, F. C. E. KUHLMANN as Secretary-Treasurer, and WILLIS BENSON as Collector of Revenue.—37 S. W. (2d) 905.

Court en Banc, April 7, 1931.

*B. H. Charles, Jourdan & English* and *Charles Claflin Allen, Jr.,* for relator.

*Orla M. Hill, Thomas P. Moore, John E. Mooney, Sam D. Hodgdon* and *George Barnett* for respondents.

WHITE, J.—Relator filed its petition in this court to compel the respondents, members of the Board of Supervisors of the Webster Groves General Sewer District No. 1, the Secretary-Treasurer of said board, and the Collector of the Revenue of St. Louis County, to levy a tax upon all the lands in said district and to cause said tax to be collected and the money paid over to the Treasurer and paid to plaintiffs in satisfaction of warrants issued by the said district and held by relator.

To the alternative writ respondents Holekamp and Kuhlmann filed their return as members of the Board of Supervisors of said district, and Curtis, the third member of said board, filed a separate return. Thereupon relator filed an answer to the return of Holekamp and Kuhlmann, and filed a motion praying this court to appoint a special commissioner to hear evidence and report his finding upon the issues of fact and law raised by the pleadings. The relator also filed a motion to strike out parts of the return of Holekamp and Kuhlmann, which motion was taken with the case.

The court appointed Judge Emil Roehrig Special Commissioner and he, after taking evidence September 12, 1930, made his report finding the facts and determining the issues of law in favor of the

relator and recommending that the alternative writ be made peremptory. Respondents filed exceptions to the report. Relator filed its motion January 2, 1931, praying this court to confirm the report of the special commissioner.

The petition of relator alleged that the Webster Groves General Sewer District Number 1 was organized by the Circuit Court of St. Louis County May 16, 1927, under the provisions of an Act of the General Assembly approved March 25, 1927; stated the official character of the several respondents, and averred that after the incorporation of the said sewer district the board of supervisors employed attorneys, appointed a chief engineer, caused necessary surveys to be made by said engineer, and incurred expense in organizing said district and making such surveys; that warrants were duly issued by the treasurer of said district for the said expenses to the persons severally entitled thereto. The petition then set out a list of the said warrants, one hundred and eleven in number, with the dates of their issuance, the names of the several persons to whom they were issued, their amounts ranging from seven thousand dollars down to three dollars, the total amounting to $58,644.96. They were for salaries of the engineer and the supervisors, for rents, supplies, attorneys' fees and other expenses incidental to the organization of said district and the said surveys. The petition then alleged that the relator purchased each and all of the said warrants from the respective holders thereof at their face value, and the same were duly assigned to relator, which, at the time of the filing of the petition, was the owner and holder of each and all of said warrants. That each of said warrants went to protest, and the date of such protest is listed. The dates of the issuance of the warrants ran from June 7, 1928, to May 15, 1930.

The petition then alleged that September 26, 1929, the supervisors of said district found that expenses had been incurred on behalf of said district in organizing, providing funds, causing surveys, etc., and duly levied a uniform tax of five cents per square one hundred feet of all land in said district to provide funds for the purpose, but took no further steps to assess or certify to the collector said preliminary tax. It is then averred that June 6, 1930, the board of supervisors adopted a purported resolution, repealing the resolution of September 26th to levy said tax; that the said district has not and never has had any funds in its treasury for the payment of the aforesaid warrants; that the act of the board, June 30, 1930, was arbitrary, capricious, for the purpose of repudiating and avoiding the warrants. It was further alleged that the Circuit Court of St. Louis County had never determined whether or not the cost of constructing the improvements is less than the benefits assessed against the land and no decree has ever been

entered assessing the benefits and damages against the land in said district. The petition then averred that July 8, 1930, the relator presented all of said warrants to the board of supervisors and demanded the payment thereof, which payment was refused; that relator demanded that the said board levy a tax for the purpose, which the board failed and refused to do.

The return of Holekamp and Kuhlmann, filed September 13, 1930, is in the nature of an avoidance without explicit confession. It is largely argumentative and pleads facts which it claims would make it unlawful for the supervisors to grant the remedy prayed. It does not deny any facts alleged in the petition except in one particular, but denies that relator had a right to request or demand a remedy, denies that the tax warrants held by the relator constituted a valid lien against the land of the district, and denies that the warrants constitute a legal claim of any kind or nature against the lands or property of said district; denies the existence of any emergency as to sanitary sewage disposal in the district, denies (the only issue of fact joined) that relator acquired the purported tax warrants in good faith or in the regular course of business expecting that a regular uniform tax would ever be levied.

The separate return of Supervisor Curtis admits in the main the facts alleged in the petition.

I. The relator filed its motion to strike out certain paragraphs in the return of Holekamp and Kuhlmann on the ground that such paragraphs tendered issues of law and not issues of fact. This on the ground that the respondent could not raise both issues of fact and issues of law going to the entire case at the same time. This motion was taken with the case. We do not enforce strict rules of pleading in cases originating in this court. We find that the issues of law thus tendered in the return arise naturally on the record, and we may consider them without a formal demurrer. The motion is therefore overruled.

II. On December 30, 1930, respondents Holekamp and Kuhlmann filed a motion asking leave to amend their return and with it the amendments suggested. This return denies certain facts alleged in the relator's petition which were not denied in the original return. It tenders issues of fact which stood admitted and were not in issue at the time the evidence was taken and the report of the commissioner filed. The commissioner after taking evidence filed his report December 12th. The case was set for argument in this court February 4, 1931. Briefs were due to be filed thirty days before that time, which would not

be later than January 5th. The amendment which these respondents asked leave to file comes six days before that and fourteen days after the report of the commissioner. To allow the amendment would compel the relator to prove certain facts alleged in its petition which stood admitted at the time the evidence was taken. It would require a continuation of the case so as to give an opportunity to take evidence upon such issues. These respondents present no reason why they did not know at the time they filed their original return all that they know now, why they were not as well prepared then as they are now to try the issues arising on the new matter alleged in their amended return. They suggest no reason for the continuance of the case for the purpose of taking evidence upon such issues.

The law is liberal in allowing amendments even after judgment in furtherance of justice. [Sec. 1274, R. S. 1919.] Such amendment may be made after a trial so as to make the pleadings *conform to the facts proved.* It is not claimed by the respondents that the amendment which they propose is necessary to conform to the facts proved. No facts are mentioned in the application and no evidence referred to in the record as facts proven, which would justify the amendment. The application is therefore overruled.

III. The Act of 1927 under which the Webster Groves General Sewer District No. 1 was organized was approved March 25, 1927. The district was organized May 16, 1927, within ninety days. The respondents claim that the law did not go into effect until ninety days after its enactment. An emergency clause was attached to the act stating that it was necessary for the public peace, health and safety. Respondents argue that conditions did not authorize an emergency clause and cite several cases to the effect that a declaration in an emergency clause that it was necessary for the public peace, health and safety, as provided in Section 57, Article IV of the Constitution, authorizing a referendum, did not make it so. It would have to appear in the text of the act, that the measure applied to a subject within that clause of the Constitution. [State ex rel. Westhues v. Sullivan, 283 Mo. l. c. 577; State ex rel. v. Bell Tel. Co., 292 S. W. 1037; State ex rel. v. Linville, 300 S. W. 1066.]

The respondents, however, tender the issue as a question of fact relating to this particular district, as follows:

"Respondents deny the existence of any emergency as to sanitary sewage disposal within said district, and deny that any such emergency has ever existed within said district."

The return then goes on to allege that the district before the passage of the act was supplied with sufficient sewage disposal.

That averment does not challenge the propriety of the emergency clause in the act. The question of fact thus raised could be considered only in determining whether the conditions in the district brought it within the terms of the act. Appellant assumes that if the conditions in this district did not authorize a passage of the act they could not exist in any other territory.

The constitutional provision relating to the referendum, which would nullify an emergency clause (Sec. 57, Art. IV), could not be construed to allow referendum part of the subjects covered by a bill and inapplicable to other subjects covered by the same bill. If it could be so construed the act does not declare the emergency applies to some subjects and not to others. The act went into effect at the same time as to every sewer district which could come within its terms. If the emergency applied to one it applied to all. If we give effect to it no district could be organized unless a menace to health required immediate action. Therefore the averment that the territory in Webster Groves General Sewer District No. 1 was already served with sewers and had no immediate need of sewers to protect the health of its inhabitants, does not go to the validity of the emergency clause, but challenges the right of that district to be organized under the act. It raises a question of fact regarding the regularity and validity of the organization of the particular district—a question which could be inquired into only in a *quo warranto* proceeding. Such an attack could not be made collaterally. [State ex rel. Waddell v. Johnson, 296 S. W. 806; State ex rel. Consolidated School District v. Jones, 8 S. W. (2d) 66, 1. c. 69.]

Respondents Holekamp and Kuhlmann who, in their return assert the invalidity of the incorporation of the district, are not in position to make that point. Their return begins:

"Now come respondents Carl H. Holekamp and F. C. E. Kuhlmann, majority members of the Board of Supervisors of the Webster Groves Sewer District No. 1 of St. Louis County, Missouri, and F. C. E. Holekamp as Secretary of said board and make return to the alternative writ of mandamus," etc. . . .

They then plead that the supervisors of said district, under the Act of 1927, could not levy the tax for the purpose demanded in the alternative writ, and set forth various reasons why, *under the provisions of the act,* the various officers could not be compelled to levy a tax.

The general rule is that facts admitted in the pleadings must be taken as true for the purpose of the action. The pleader is estopped to take a position inconsistent with such judicial admissions. [49 C. J. 122-125; Lilly v. Menke, 143 Mo. 146; Bensieck v. Cook, 110 Mo. 173; Richards v. Johnson, 261 S. W. 53; Knoop v. Kelsey, 102 Mo. 1. c. 297.]

604

Numerous cases are cited in the footnote to that citation in Corpus Juris. Those rulings comprehend various situations in which such estoppel occurs where the record shows that the pleader states facts or assumes a position in his petition or answer, he cannot be heard to take a position inconsistent with such statement.

Whether or not the Webster Groves Sewer District was properly incorporated as such was a question of fact. These respondents admit the fact by declaring in their returns that they are a majority of the board of supervisors. That is an admission that under the provisions of Section 5 of the act they took the oath of office as such supervisors of the district which they now want to say did not exist.. They performed certain functions as such officers which they now declare they had no right to do. They attempt to plead themselves out of existence as parties to the suit in the character which they assert in filing their return. Their return asserts they are bound by certain provisions in the act which they attempt by this defense to say have no binding force. They are estopped to deny the official character under which they make their return, and therefore the legal existence of the district under the authority of which they acted.

IV. Respondents Holekamp and Kuhlmann in their return tender their one issue of fact in this form:

"Respondents deny that relator acquired its purported tax warrants in good faith or in the regular course of business expecting that a preliminary uniform tax would ever be levied against the property and lands within the said district."

This does not mean that the relator bank did not purchase and pay for the warrants at par, for that is admitted in another part of the return. It means, we find from respondent's brief, that the warrants were purchased by relator in pursuance of a contract which they plead in their return. The relator in answer to the return denies that the contract mentioned is of the purport and has the effect set out in the return. The burden was upon the respondent to introduce the contract, but relator anticipating the issue introduced it. The contract recites the organization of the district, incurring of expense in preliminary surveys, the agreement of relator to purchase at par warrants issued by the district, the agreement of the district to issue the warrants, with other stipulations as to amount, manner and form, and a stipulation by the district to levy a tax within a given time to pay the same.

Respondents find several infirmities in this contract which are specifically mentioned in their brief and presented argumentatively in their return, as follows: the purchase of warrants under the

contract amounted to a loan; the contract provided an arrangement to defer the levy of the preliminary tax; it imposes upon the taxpayers the burden of interest charges; undertakes to control the discretion of the supervisors; incurs a present indebtedness without a present levy of tax to discharge it.

A further objection is made that relator did not come into court with clean hands. This appears in the exceptions to the finding of the commissioner in this form:

"g. Both before and after the agreement (Relator's Exhibit No. 1) the relator bank had participated in meeting of representatives of the Mississippi Valley Trust Company, Kauffman-Smith & Co., George H. Burr & Co., Stix & Co. and Oliver J. Anderson & Co., which resulted in a 'gentlemen's agreement' to undertake to contract the purchase of warrants and bonds to be issued by sewer districts formed and to be formed in St. Louis County, Missouri, and pursuant to said 'gentlemen's agreement' the several parties named did contract the purchase of both warrants and bonds to be issued by the Central Sewer District, Overland Sewer District, Jennings Sewer District and the Lemay Ferry District."

The several contracts mentioned were introduced in evidence over the objections of relator. They were irrelevant because it was not shown that relator ever knew anything about any of them.

As to the meeting at which it is claimed that by the gentlemen's agreement there entered into the relator did not come into the case with clean hands, the evidence of the respondents' witnesses was to the effect that the Boatmen's National Bank, relator, was never represented at any such meeting. There was no evidence to show that relator had any agreement or understanding with the several other parties who dealt with other districts. The commissioner's finding of fact upon that proposition is as follows:

"6. That no other agreement, understanding or arrangement except the contract quoted above relating to the time when or the manner in which said warrants should be paid, was made or had between relator and respondent district, directly or indirectly."

The commissioner as a conclusion of law found that the relator did not at any time by any agreement, oral or written, waive, defer, modify, forfeit or otherwise impair its legal right either to demand the immediate levy of the said tax or the issuance of the writ petitioned for. The conclusion, therefore, of the commissioner was that the contract was perfectly legal. We think the record supports that conclusion, but we find it unnecessary to go into the elaborate arguments, pro and con, on that subject.

The Act of 1927, page 441, provides for the appointment by the court of three supervisors, prescribing their duties: that the board of supervisors shall appoint a competent civil engineer, who shall

make necessary surveys of the land, report a plan for disposal of sewage and for storm sewers, including any necessary outlets, etc., extending beyond the boundaries of said district, etc. The supervisors are required to adopt his report or a modification of it and file the same with the secretary of the board.

The board of supervisors *"may* as soon as appointed and qualified levy a uniform tax in paying the expenses incurred and to be incurred in organizing the district and making surveys of the same and assessing benefits and damages and in paying other necessary expenses prior to the time when said board shall be empowered by subsequent provisions of this act to provide funds with which to pay the total cost of improvements and works of the district; that the tax shall be paid as soon as assessed, and become delinquent if not paid by December 31 of that year; that the board of supervisors shall have full power and authority to plan, construct, excavate and complete any and all works or improvements which may be needed to carry out, maintain and connect the sewer system; may appoint attorneys to act for the district and advise the board.''

It is made the duty of the collector of revenue for the county to collect the taxes.

The secretary of the board (Section 21) shall act as treasurer and is authorized to pay out funds of the district only on warrants issued by the district. The form of such warrants is set out.

If any warrant issued under the act is not paid when presented to the treasurer of the district, because of lack of funds, such fact shall be endorsed upon the back of such warrant, and thereafter shall draw six per cent interest.

There is no express direction to the board of supervisors to issue warrants for expenses incurred in making preliminary surveys, etc., but it is clearly implied from their authority to incur the expenses mentioned. They did issue the warrants sued on. Their authority under the act to issue them is not disputed.

This is not a suit upon the contract which came into the case only incidentally because the respondents pleaded it. Under the statutes mentioned above the board of supervisors had a right to incur the expense of preliminary surveys. That expense was incurred. They had a right to issue warrants for the payment of that expense. Relator had a right to purchase the warrants. It stands admitted that the relator did purchase them at their face value. It is not even claimed that they could have been sold for more, even if that were competent under the pleadings. It had the same right to enforce the collection of those warrants that the original holders of the warrants had.

Since the respondents did only what they had a right to do in the performance of their duty as supervisors, since the plaintiff

acquired the warrants as it had a legal right to acquire them, it would not matter if any prior agreement or understanding by which it agreed to purchase them was without lawful authority; it would not matter even if relator entertained an unlawful purpose in purchasing them; as long as it acquired them in a lawful manner its right to collect them cannot be defeated. A criminal purpose to do a lawful act would not invalidate the act. The general rule is stated thus in 6 Ruling Case Law, page 822:

"But an illegal agreement made by a plaintiff will not defeat him unless his cause of action is founded upon, or arises out of, such agreement. His right to recover upon a ground of action that exists independently of the contract is not affected thereby."

The principle is expressed thus in 13 Corpus Juris, page 502:

"An agreement will be enforced, even if it is incidentally or indirectly connected with an illegal transaction, provided it is supported by an independent consideration, or if plaintiff will not require the aid of the illegal transaction to make out his case." See 2 R. C. L. Supplement, 212, 213; Commercial Club of Joplin v. Davis, 136 Mo. App. 583; Walters National Bank v. Bantock, L. R. A. 1915C, p. 531; McDearmott v. Sedgwick, 140 Mo. 172, 183; Roselle v. Beckemeir, 134 Mo. l. c. 391; Finley v. Williamson, 202 Mo. App. l. c. 289; State ex inf. Gentry v. American Can Company, 319 Mo. l. c. 456.

In the Beckemeir case the court said:

"The facts bring him (plaintiff) within the protection of a recognized principle that a party seeking a recovery cannot be defeated on account of the illegality of his prior conduct, when he can make out his case otherwise than through the medium of an illegal transaction."

In this case the relator did not plead the contract. He could have made out his case without any reference to it.

V. Respondents make the point that the relator is a national bank and was without power to purchase the warrants which it seeks to collect. The respondents cite no part of the National Banking Act which supports that position. The first case cited, Bank v. Johnson, 104 U. S. 276, is where a national bank discounted an obligation at a rate not allowed by the National Banking Act and was sued for the excess. The other cases cited are equally irrelevant. On the contrary we find cases from the Federal Court holding that national banks may acquire title to securities when they purchase them at their face value. [Morris v. Third National Bank, 142 Fed. 25.] In this case it is not disputed that the relator purchased the warrants at their face value.

608

VI. It is further claimed by respondent that mandamus will not lie because the levy of preliminary tax is discretionary with the supervisors. The act (Laws 1927, p. 443) provides that the board of supervisors "may" as soon as qualified levy a uniform tax to be used for the purpose of paying expense incurred. Respondents construe that section as leaving it discretionary with the board of supervisors whether they take any steps to pay the preliminary expense which the act requires them to incur in making surveys and making a plan of the sewer. It is further suggested that they must levy such tax "as soon as appointed and qualified," and cannot postpone such levy. The inference is that the levy could not be made at all if postponed. The use of the word "may" in Section 7 refers to the exercise of discretion as to the *time* when the supervisor shall make the levy. They may do so as soon as appointed. But they must do so at some time or other, or else the law leaves them at liberty to defeat a lawful debt by the mere act of postponement.

The conclusion of the commissioner that the relator is without a plain, adequate and speedy remedy at law and has a clear right to a peremptory writ of mandamus is supported by the record.

VII. Respondents in their return allege that at the time the relator requested a levy of the preliminary tax the property owners and taxpayers had filed an injunction suit against the supervisors attacking the legal existence of said district, as unconstitutional, and to restrain the supervisors of the district from any further operation; that the Prosecuting Attorney of St. Louis County has filed intervening petitions on behalf of the State of Missouri in numerous cases pending against the sewer districts in St. Louis County, and that the supervisors, respondents here, have been duly informed of the pendency of such suits. There is nothing in this averment of the return to show that the injunction suit mentioned was pending at the time this suit was instituted, nor does the return aver that issues were tendered in the injunction suit which involved the right to levy the tax in this case, or that relator was a party to such suits or bound by them in any way. Nor have we been cited to any proof to that effect. There is no allegation in the return that other suits pending against other districts has any relation whatever to the issues pending here.

It seems to be claimed further that the respondents do not repudiate their warrants, but merely desire to defer the tax for good cause. They do not mention any other means by which these debts may be paid or that there is any intention later to levy such tax. On the contrary, the entire scope

of the return shows a repudiation. They deny the existence of the corporation or the right to levy any such tax.

All the equities in this case are with the relator. The evidence shows that it purchased the warrants in good faith. Some of those warrants were issued to officers of the district, including the predecessors of these respondents, supervisors, and were sold by them to the relator for cash at par. Many of the objections which are now urged to the validity of the district and the inequitable conditions which arose on its formation have been litigated and determined by the courts against the contentions of respondents in cases to which this relator was not a party.

The peremptory writ is awarded. All concur.