A. F. Dormeyer, Appellant, v. Titus Haffa, Appellee.

Gen. No. 45,321.

Opinion filed April 9, 1951. Rehearing denied April 27, 1951. Released for publication May 7, 1951.

JOSEPH KEIG, of Chicago, for appellant.

HENRY POLLENZ, and JOHN A. ZVETINA, both of Chicago, for appellee; HENRY POLLENZ, and S. B. ROSENZWEIG, both of Chicago, of counsel.

MR. JUSTICE FEINBERG delivered the opinion of the court.

Plaintiff sued defendant upon a guaranty of performance of a contract of employment, between plaintiff and his wife and a partnership doing business as Screw Manufacturing Company, and also upon an alleged oral agreement between plaintiff and defendant, entered into about June 1, 1944, to the effect that if plaintiff would obtain for the A. F. Dormeyer Manufacturing Company a permit or authorization from the War Production Board to manufacture 5,000 or more food mixers, defendant would cause the said company to manufacture and sell the same to plaintiff at $9 each. After many amendments and supplements to the original complaint filed herein, the cause proceeded to trial with a jury upon Count II and Count IV of the last amended and supplemental complaint. A verdict for defendant was directed by the court, upon which judgment was entered, from which plaintiff appeals.

It appears from the evidence that negotiations between plaintiff and defendant, relating to the sale of plaintiff's stock in the Dormeyer corporation, culminated about June 1, 1944, in a written agreement, which, with the stock to be sold, was placed in escrow

178

until the purchase price was paid. At the same time and as a part of the transaction, defendant caused the partnership doing business as Screw Manufacturing Company, of which he seemed to have control, to enter into the contract of employment declared upon in Count II. The contract between the Screw Manufacturing Company and plaintiff and his wife, Daisy I. Dormeyer, provided in substance that the Dormeyers, referred to as parties of the second part, agreed to devote their best efforts to the business of the company; that the parties of the second part jointly would not be required to devote more than five hours per day for a period of five days a week to the work of the company, and that the work would not consist of manual labor or shop work but only work of an executive, administrative or advisory capacity; that they were to be paid for such services $833.33 per month, commencing July 1, 1944, and during the term of the agreement, which should run from June 1, 1944, through the duration of World War II, plus six months thereafter; that in the event Albert Dormeyer should die or become incapacitated and unable to render services, and such incapacity shall continue for 90 days, then the compensation payable shall be $250 per month only; that in the event of the death or incapacity of Daisy I. Dormeyer, under like circumstances, the compensation shall be $583 per month. To this written contract was attached a guaranty, signed by defendant, guaranteeing full and complete performance by the parties of the first part.

In connection with this employment contract, we find the astounding charge, under oath, in Count III of the amended and supplemental complaint filed December 5, 1946, that the said contract of employment was a mere sham and device or method of paying, in part, for the shares of stock of the corporation, and that the name of his wife, Daisy Dormeyer, was in-

179

cluded merely as a means for paying her in the event of plaintiff's death or his inability to perform the pretended services called for by the contract; that it was in fact agreed between plaintiff and defendant that plaintiff would not be required to render any service, and that in all of the transactions between plaintiff and defendant, defendant was in control and dominated the affairs of the company. It is true that Count III was withdrawn upon the trial, but its allegations, under oath, were used as admissions against plaintiff. *Daub v. Englebach,* 109 Ill. 267. When confronted with these charges in Count III, plaintiff testified that the contract was a sham and device, and that it was merely used as a means or medium of paying in part the purchase price for the stock and to be of help to the defendant taxwise by paying for pretended services not intended to be rendered. In other words, the charge in Count III, and the testimony, would tend to establish a conspiracy between plaintiff and defendant and, presumably, the wife of the plaintiff, to cheat and defraud the United States government of income tax. Under all of the well-settled principles of public policy, no court is required or should lend its aid to such an illegal contract, and will close its doors to any plaintiff seeking to enforce the same. *In re Estate of Johnson,* 339 Ill. App. 110, 115; *De Kam v. City of Streator,* 316 Ill. 123; *Duck Island Hunting & Fishing Club v. Edward Gillen Dock, Dredge & Construction Co.,* 330 Ill. 121. In this view, we deem it unnecessary to consider other questions raised and argued concerning the right to recover under Count II. The court properly directed a verdict for defendant as to said Count.

■ The guaranty of the defendant must be considered with the original contract, and if there be no liability under the original contract, there can be none under the guaranty. *Bartlett v. Wheeler,* 195 Ill. 445,

451; *Kreizelman v. Stevens,* 381 Ill. 73; *Bogardus v. Phoenix Mfg. Co.,* 120 Ill. App. 46.

■■ The contract, as alleged in Count IV, wholly lacked in mutuality. No obligation is alleged on the part of the plaintiff to accept and pay for the mixers to be manufactured. There is no certainty as to the number which the defendant was obligated to manufacture and sell to the plaintiff, nor any time fixed for delivery in the event of manufacture. *Higbie v. Rust,* 211 Ill. 333, 337; *Peru Wheel Co. v. Union Coal Co.,* 295 Ill. App. 276. The alleged contract was conditioned upon plaintiff being able to obtain a permit from the War Production Board to manufacture 5,000 or more mixers, to be sold to plaintiff. This contemplated that the permit would in terms permit the manufacture and sale of such mixers to plaintiff and would continue in force a sufficient length of time to allow the manufacture and sale of the same. It appears from the evidence that plaintiff did not inform the War Production Board that he was to be the beneficiary of such a permit for the manufacture of the mixers, and that he made material misrepresentations to the Board in obtaining the permit. It is undisputed upon this record that on August 5, 1944, and before the manufacture of any of these mixers, the War Production Board cancelled said permit and thus prevented the Dormeyer company from manufacturing the same. Thus, before the time had arrived when defendant could be charged with a breach of said alleged contract, the permit ceased to exist—the authority which plaintiff, by his own pleading, and evidence, recognized was necessary for the manufacture of the mixers.

■ The permit procured from the War Production Board, authorizing the manufacture of the mixers, contained the following restrictions and limitations: (1) granted permission to manufacture within a lim-

ited time 10,000 mixers; (2) prohibited the sale of more than 12 mixers to any one retailer, and (3) limited the labor to be employed for the manufacturing of the product. The agreement alleged in Count IV, as well as the evidence, established the parties had not contemplated any such conditions in the permit to be procured.

Both upon the allegations of the complaint and the evidence, plaintiff failed to make out a case, and the court was justified in directing a verdict.

The judgment of the superior court was correct and is affirmed.

*Affirmed.*

NIEMEYER, P. J. and TUOHY, J., concur.