[Civ. No. 29305. Second Dist., Div. Four. Dec. 23, 1966.]

KEVIN B. SWEENEY, Plaintiff and Respondent, v. KANS, INC., Defendant and Appellant.

---

[2]This paragraph reads: ''The document filed herein, dated December 11, 1962, is admitted to probate as decedent's last will.''

476

Darling, Shattuck, Hall & Call and W. John Kennedy for Plaintiff and Respondent.

Conroy & Conroy and Edward L. Conroy for Defendant and Appellant.

FOX, J.*—This action was brought by plaintiff against the defendant corporation, KANS, Inc., to recover the $15,000 owing the plaintiff under a written contract.

The parties filed a joint pretrial statement in the trial court stipulating to nearly all of the relevant facts. Plaintiff was the only witness to testify at the trial. His testimony was quite brief.

Defendant corporation was formed in May 1958 to receive the tangible and intangible personal property of radio station KIMO[1] in Independence, Missouri. At all times prior to the execution of the relevant contracts only three persons had any proprietary interest in the corporation. They were plaintiff who owned 40 percent, Kenyon Brown who also owned 40 percent and Glenn Griswold who owned 20 percent of the corporate stock. These same three individuals constituted its only directors and officers.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

[1]At the time the contract was entered into, the name of defendant was KIMO, INC. This name was later changed to KANS, INC.

On August 14, 1959, the defendant corporation was indebted to its stockholders in the amount of $47,250,[2] and to the Bank of New York $20,000, the latter debt becoming due on the following day.

On August 14, 1959, Martin Hersh entered into contracts with the defendant's three stockholders to purchase all of their stock and to provide the defendant with sufficient monies to discharge its aforesaid indebtedness. The three contracts whereby Hersh sought to acquire defendant corporation comprise two letter contracts and the Sweeney-KANS contract which is the subject of this action. These documents all bear the same date. Plaintiff, Griswold, and Brown were each familiar with all the documents which were the means by which Hersh sought to acquire the complete ownership of defendant corporation.

With respect to plaintiff, it was agreed by all parties that $15,000 of the $34,000 to be received by plaintiff for his stock would be paid out of the corporate funds, rather than directly by Hersh. At Hersh's request the debt of defendant corporation to plaintiff was drafted in the form of a consulting agreement "to legitimately enable the defendant corporation [according to Hersh's representations] to deduct the payments to plaintiff from defendant's taxable income." All parties, however, understood that this format was adopted solely for the convenience of Hersh and defendant corporation, and that plaintiff would not, in fact, be called upon to render any actual consulting services.

After execution of the aforementioned three agreements, Hersh paid to defendant corporation $39,900. The defendant used $20,000 of this amount to pay off its debt to the Bank of New York (which was secured by a pledge of plaintiff's stock) and to discharge its indebtedness to plaintiff in the amount of $19,900. Hersh also paid plaintiff $4,000 cash to reimburse him for his capital contribution to defendant corporation in that amount. Plaintiff thereupon transferred his 4,000 shares of defendant's corporation stock to Hersh. This transfer was duly noted in defendant's corporate records. Plaintiff testified that he would not have transferred his stock to Hersh except for defendant corporation's promise to pay him the $15,000 involved in this action.

Thereafter, defendant corporation tendered to plaintiff 13 checks for $242.50 each without ever demanding any actual

[2] It owed plaintiff $19,900, Brown $19,000, and Griswold $7,450.

consulting services from plaintiff. Prior to any of these checks being cashed by plaintiff, defendant corporation stopped payment on each of them. Plaintiff has not been paid any part of the $15,000. Hence, this lawsuit. The trial court rendered judgment in favor of plaintiff. Defendant has appealed.

Defendant's first contention is that the Sweeney-KANS contract is not enforceable because it is lacking in mutuality. Paragraph 2 of that contract specifies that Sweeney shall devote such time "as agreed upon between the parties." From this defendant argues that this is simply an agreement to agree and that no definite obligation to perform services is imposed on plaintiff by this contract. In making this argument defendant overlooks the stipulated fact that at the time the contract was entered into, "it was understood that Sweeney would not in fact be called upon by defendant to render any actual consulting services." Finding XI is in harmony with this stipulation.[3] Thus, the time that plaintiff would devote to this consultation work had been specifically determined by the parties prior to entering into the contract; namely, zero time.

Paragraph 4 of the contract corroborates this intention of the parties by providing that Sweeney's death during the term of the contract does not interrupt the monthly compensation payments which are spread over a period of five years.

■ The evidence as to the real agreement between the parties was proper for the court to consider since it was admitted, and not objected to, and had a bearing on the adequacy of the consideration for the Sweeney-KANS contract. On this point the following language was quoted with approval in *Hackney* v. *Hargrove* (1924) 259 S.W. 495, 496 (Missouri Court of Appeals) :[4] "And even where consideration is expressed in the instrument, it is now well settled in this state that not only the amount of this consideration may be questioned by parol testimony, but the character of the consideration may be shown, even though different from that stated in the instrument [citing Missouri authorities]."

■ There is no question that the Sweeney-KANS contract was an integral part of the letter contract of even date

---

[3]Finding XI reads in part: "However, it was clearly understood and agreed to by Hersh, Brown, and Griswold, and by Plaintiff and Defendant that Plaintiff would not be required to render any actual consulting services to Defendant."

[4]The contract provides that it shall be construed by the law of Missouri.

between Hersh and Sweeney. The consideration for the defendant corporation's promise to pay was Sweeney's transfer of his stock to Hersh and the transfer of $39,900 by Hersh to defendant corporation which enabled it to discharge certain of its loans. Defendant corporation thereby received a benefit which would be adequate consideration for its promise to pay Sweeney.

Furthermore, the law of Missouri does not require that consideration to support a contract actually constitutes a benefit to the promisor. The Supreme Court of Missouri stated the principle in *Industrial Bank & Trust Co.* v. *Hesselberg* (1946) 195 S.W.2d 470, 474, in this language: ''It is not necessary to the validity of the contract that a consideration be of real value to the promisor. A benefit to a third person [e.g., Hersh] or a detriment to the promisee [e.g., Sweeney] is sufficient consideration to render the promisor obligated.''

Defendant argues in vain that plaintiff was permitted to recover on a contract wholly different from that alleged in his complaint. Plaintiff alleged that on or about August 14, 1959, for a valuable consideration, he entered into a written contract with defendant corporation wherein defendant agreed to pay him $15,000. The court found that: ''On or about August 14, 1959, and for a valuable consideration, Plaintiff and Defendant entered into a written contract (the ''Sweeney-KANS'' contract), a true copy of which is attached to Plaintiff's Trial Brief herein as Exhibit 1 and which is in evidence as Defendant's Exhibit A by reference.'' There can be no doubt that the complaint and judgment are based on the same document.

The thrust of defendant's argument is that plaintiff by stipulation has established that this contract should be construed as a simple debt rather than an obligation conditioned upon the rendering of personal services. Examination of the record reveals that these issues were injected into the case by an amendment to defendant's answer. Plaintiff has countered these defenses by showing the true nature of the written document dated August 14, 1959. The basic question before the court was: did defendant owe plaintiff $15,000 by reason of that written document? The trial court answered this question in the affirmative. Defendant was not misled in any respect.

Defendant argues that the Sweeney-KANS contract upon which this suit is based is illegal in that it violates public policy on the theory that it would enable Hersh to perpetrate

480

an income tax fraud upon his acquisition of 100 percent of KANS stock.

In making this argument, defendant overlooks Findings XIV and XIX wherein the trial court found that the Sweeney-KANS contract was neither intended to nor did, in fact, work a fraud upon the taxing authorities.[5] ■ Defendant's contention of illegality is, of course, an affirmative defense. The burden of establishing this defense was, therefore, on the defendant. In making this argument, defendant fails to appreciate that the burden was on it to establish this point and that the trial court has found against it. In this connection defendant has contented itself by advancing its bare conclusion that the evidence is insufficient to support these findings. In making this contention defendant misconceives the problem before it. Defendant must, on appeal, demonstrate that the evidence compels a finding on the issue of illegality in its favor.

■ In this connection it should be noted that plaintiff was, by statute, entitled to a presumption that the Sweeney-KANS contract was executed by the plaintiff in an honest belief that he was not doing anything improper. (Code Civ. Proc., § 1963, subds. 1, 33.) Whether the evidence was sufficient to rebut these presumptions was essentially for the trial court's determination. There was no showing that defendant had any profits against which a deduction could have been claimed. Furthermore, the court was entitled to presume that in claiming any deductions in its return to the Internal Revenue Service, the defendant would not suppress any of the relevant facts concerning the true nature of the Sweeney-KANS contract. (Code Civ. Proc., § 1963, subd. 1.)

Actually, any question relative to securing a deduction on behalf of defendant for the payments to be made by it to plaintiff under the contract is now moot since evidence was presented to the trial court to the effect that the Estate of

---

[5] Finding XIV reads:

"In entering into this Hersh-Sweeney contract and the Sweeney-KANS contract, and in transferring his stock to Martin Hersh thereunder, Plaintiff acted with the honest and reasonable belief that said contracts, including the format thereof, were legitimate. At no time did Plaintiff intend to or in fact did he do or assist in any act to defraud Defendant, its stockholders, its creditors, or the State and Federal Income Tax authorities.''

Finding XIX, in pertinent part, reads:

"The enforcement of the Sweeney-KANS contract has not and will not work either an actual or constructive fraud upon Defendant, its stockholders, its creditors, or upon the State and Federal Income Tax authorities, . . .''

Kenyon Brown and not the defendant corporation will pay any judgment that may be recovered in this action.[6]

Considering the record in its entirety, it is apparent that the trial court did not abuse its discretion in not sustaining defendant's position on the issue of illegality.

Defendant relies heavily on *Dormeyer* v. *Haffa* (1951) 343 Ill.App. 177 [98 N.E.2d 532]. He overemphasizes, however, the significance of that case. In *Dormeyer* the appellate court was sustaining the interpretation placed upon the evidence by the Illinois trial judge. In the case at bench we are urged to upset a finding adverse to the defendant which had the burden of establishing its affirmative defense of illegality. To do this, it would be necessary for this court to draw inferences contrary to those drawn by the trial judge. We, of course, do not have such authority.

Furthermore, it will be recalled that the contract between plaintiff and defendant corporation was to be interpreted in accordance with the laws of Missouri. Moreover, even if it had been established that defendant had illegal motives in requiring the contract to be in the form of a consulting agreement, it does not appear that such fact by itself would defeat plaintiff's right to recover under the law of Missouri. It must be borne in mind that once plaintiff had transferred his stock, his right to payment therefor was fully established, regardless of how the Internal Revenue Service might view any claim by defendant that the payments were a deductible business expense. Apposite on this point is *Kistenmacher* v. *Travelers' Indemnity Co.* (1925) 273 S.W. 125, 126 [Ct. of Appeals, Missouri] :

"It is a well settled proposition of law . . . that, when a contract is only connected in a remote way with an unlawful transaction, if such contract is supported by an independent consideration, and plaintiff can make out his case without relying upon the unlawful transaction, the contract is valid and should be enforced."

The Supreme Court of Missouri in *State* ex rel. *Boatmen's*

---

[6]Paragraph XVIII of the stipulated facts provides:

"On October 2, 1962, the estate of F. Kenyon Brown (Los Angeles Superior Court No. P441834) sold, with Court approval, certain estate assets pertaining to the Defendant corporation, including the estate's 60% stock interest in Defendant. The purchase price for these assets was $50,000. The terms of said sale provided that $30,000, of said purchase price was to be held in a Court approved escrow account by the Estate for the purpose, among others, of providing a fund to pay any judgment recovered herein against Defendant."

*Nat. Bank* v. *Webster Groves General Sewer Dist. No. 1*
(1931) 327 Mo. 594 [37 S.W.2d 905] states the principle in
this language at page 910: '' 'An agreement will be enforced
even if it is incidentally or indirectly connected with an
illegal transaction, provided it is supported by an indepen-
dent consideration, or if Plaintiff will not require the aid of
the illegal transaction to make out his case.' ''

In this connection it should be noted that the law of
Missouri is not substantially different from the public policy
of California on this point. (See *Robertson* v. *Hyde,* 58 Cal.
App.2d 667 [137 P.2d 703].)

Defendant's reliance at oral argument on *Tri-Q, Inc.* v. *Sta-
Hi Corp.,* 63 Cal.2d 199 [45 Cal.Rptr. 878, 404 P.2d 486], is
misplaced. In that case the trial court in its findings was
critical of the purpose of the selling stockholder and held
against him. This was reversed by the Supreme Court. In the
instant case the trial court found an absence of illegal intent
on the part of Sweeney and that the enforcement of this
contract will not work a fraud upon the tax authorities. Actu-
ally, the cited case appears to support the position of plaintiff
herein.

Defendant challenges the sufficiency of the evidence to
support certain findings in addition to those previously
discussed. It is unnecessary to consider these contentions since
an examination of the record indicates that the findings essen-
tial to sustain the conclusions of law and judgment have
adequate evidentiary support.

The judgment is affirmed.

Jefferson, Acting P. J., and Kingsley, J., concurred.

A petition for a rehearing was denied January 18, 1967,
and appellant's petition for a hearing by the Supreme Court
was denied February 21, 1967.