Filed 12/19/24  Chodosh v. Palm Beach Park Association CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| FLOYD CHODOSH, individually and as Trustee, etc. et al.,<br><br>    Plaintiffs and Respondents,<br><br>        v.<br><br>PALM BEACH PARK ASSOCIATION,<br><br>    Defendant and Appellant. | G062202<br><br>(Super. Ct. No. 30-2010-00423544)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, William T. Claster, Judge. Reversed and remanded with directions.

Allan B. Weiss & Associates, Allen L. Thomas & Eric C. Demler for Defendant and Appellant.

Law Offices of Patrick J. Evans and Patrick J. Evans for Plaintiffs and Respondents.

*       *       *

Six years ago, another panel of this court affirmed in substantial part a judgment entered after a bench trial on plaintiffs' complaint and defendant Palm Beach Park Association's (the Association) cross-complaint. It simultaneously reversed the judgment in limited part based on an issue brought to light by this court's requests for supplemental briefing. On remand, the parties disputed, and the trial court struggled with, the scope of the remand. Following an evidentiary hearing, during which the parties were permitted to present evidence concerning statutory factors potentially relevant to an affirmative defense that plaintiffs were attempting to prove to counter a cross-claim by the Association, the court determined the remand scope was narrow and thus found irrelevant a variety of factual matters. The one factual matter it adjudicated led it to conclude plaintiffs established their affirmative defense, and the court also found the Association's attempts to defeat the affirmative defense did not have merit.

The Association contends the trial court unwarrantedly limited the scope of the issues to be resolved on remand and erred in evaluating its asserted responses to plaintiffs' affirmative defense. Having reviewed the record in full, though we understand the court's thought processes, we find it mistakenly limited its adjudication on remand in a manner that effectively allowed plaintiffs to establish their affirmative defense without proving all relevant factual matters. Notwithstanding that error, we conclude remand for a further evidentiary hearing is unnecessary. Prior to coming to its conclusion concerning the scope of the remand, the court allowed the parties to present evidence concerning all the relevant factual matters. On the record

2

before us, it is clear plaintiffs failed to provide evidence concerning multiple factors necessary to prevail on their affirmative defense. Because, as a matter of law, they did not meet their burden of defeating the Association's cross-claim, we reverse the amended judgment and direct the trial court to reinstate the prior judgment which adjudicated the cross-claim in the Association's favor.

## FACTS

### I.

#### THE PARTIES AND PROPERTY

The background of the property in question, dating back to its acquisition by a family in the 1840s and the parking of trailers on the property by the 1950s, is detailed in a prior unpublished opinion issued by another panel of this court. (*Chodosh v. Palm Beach Park Assn.* (Dec. 17, 2018, G053798) (*Chodosh I*).) Plaintiffs are former residents of the property.[1]

In 2007, the Association acted on a right of first refusal to purchase the property. A lender loaned most of the purchase money to the Association. In turn, the Association's directors voted to assess each of its 126 members, on a per capita basis, the cost of buying the property. It amounted to $200,000 per member. Those unable to pay the money immediately were allowed to borrow the money from the Association pursuant to a promissory note. If a member were to default on monthly note payments, the entire remaining balance would become due and payable. The note payments later became a condition of each member's lease, making nonpayment a material breach of the lease.

---

[1] For various reasons, only six of the original plaintiffs are involved in this appeal.

Unable to continue making payments, nine of the residents sued the Association in late 2010. Two years later, they filed a fourth amended complaint (amended complaint) and the Association filed a verified cross-complaint along with a notice of intent to terminate plaintiffs' tenancies. The amended complaint contained eleven causes of action, including one alleging violation of the federal Truth in Lending Act (15 U.S.C. § 1601 et seq.; TILA).[2] The cross-complaint sought unpaid rent and ejectment. Plaintiffs' verified answer asserted more than 30 affirmative defenses.

## II.

### ORIGINAL TRIAL

Trial on the amended complaint and the cross-complaint took place in four phases between 2013 and 2015. A now retired judge presided over the first phase and a different now retired judge heard the remaining phases.

Among the court's conclusions in relation to plaintiffs' amended complaint were that the Association's loans to plaintiffs violated TILA and had to be rescinded, plaintiffs were entitled to restitution for any sums already paid on the loans, they had no real property interest in any portion of the property, and they failed to demonstrate the Association breached any fiduciary duty owed to them.

As for the Association's cross-complaint, the court found each plaintiff owed the Association for past due rent because each had continued

---

[2] The causes of action in the amended complaint were: (1) breach of contract; (2) violation of governing documents, articles and bylaws; (3) violation of statutes; (4) negligent misrepresentation; (5) breach of fiduciary duty; (6) negligence; (7) declaratory relief; (8) violation of TILA; (9) quiet title; (10) wrongful eviction; and (11) slander of title.

to reside on the property without paying rent for varied periods of time. The court separately calculated the amount owed by each plaintiff. It also determined the Association was entitled to a judgment of ejectment to remove plaintiffs from the property.

The ensuing judgment (original judgment) specified, inter alia, the amount each plaintiff owed the Association, taking into account both the unpaid rent owed, the restitution entitlement for the rescinded loans, and prejudgment interest. The total amounts ranged from roughly $89,000 to $175,000.

III.

PRIOR APPEAL

Seven of the nine plaintiffs appealed from the original judgment. During the course of the appeal, this court requested supplemental briefing from the parties on more than one occasion. Among the topics of inquiry were whether the Association was ever required to have or obtain certificates of occupancy, or the equivalent thereof, for plaintiffs' units. Plaintiffs had raised the absence of certificates of occupancy issue at trial in connection with their amended complaint, but the trial court concluded they failed to explain how such an absence, even if certificates were deemed necessary, would translate into a cause of action.

Another panel of this court affirmed the original judgment in substantial part and reversed it in part. (*Chodosh I, supra*, G053798.) The partial reversal concerned the Association's cross-claim for unpaid rent. Although plaintiffs did not raise illegality of their leases as an affirmative defense to the Association's cross-complaint, *Chodosh I* determined illegality based on the lack of certificates of occupancy or the equivalent thereof was an issue that could be considered because "the issue of the absence of certificates

5

of occupancy was raised at trial – even if obliquely as part of a shotgun blast of allegations of illegality." (*Ibid.*, italics omitted.)

In considering the issue, *Chodosh I* identified various mobilehome related statutes and regulations which, when considered together, set forth a permitting scheme for the installation of a mobilehome unit on a site for purposes of human habitation. (Health & Saf. Code, § 18551; Cal. Code Regs., tit. 25, §§ 1102, 1324, 1366.)[3] An installation done in such a manner that a mobilehome becomes real property requires a certificate of occupancy, and an installation done in such a manner that a mobilehome remains chattel (i.e. personal property) requires a mobilehome installation acceptance. (Cal. Code Regs., tit. 25, § 1366, subd. (a).) The opinion further explained a mobilehome park operator's obligations vis-à-vis those required permits: park operators must assure the proper installation of units in their park, which includes ensuring installations do not occur without a required permit. (See Cal. Code Regs., tit. 25, § 1102.)

Relying on case law holding that a lease agreement for a residential building lacking a required certificate of occupancy is an unenforceable illegal contract (e.g., *Carter v. Cohen* (2010) 188 Cal.App.4th 1038, 1047-1049; *Espinoza v. Calva* (2008) 169 Cal.App.4th 1393, 1399-1400 (*Espinoza*); *Gruzen v. Henry* (1978) 84 Cal.App.3d 515), *Chodosh I* reasoned that a lease agreement for property underlying a mobilehome which lacks a required certificate of occupancy or mobilehome installation acceptance is likewise illegal and unenforceable. In doing so, the opinion rejected the Association's argument that any lack of a required permit is entirely

---

[3] All further statutory references are to the Health and Safety Code unless otherwise stated.

6

plaintiffs' fault because they owned the units: "[Cal. Code Regs., title. 25, section] 1102 requires some affirmative action. The park operator must 'not permit' installations without a permit. The operator cannot therefore just assume responsibility rests entirely with the unit owners."

In response to an argument made by the Association, however, *Chodosh I* recognized that whether each plaintiff's unit qualified as a mobilehome was an issue which necessitated an evidentiary hearing. As relevant to the certificate of occupancy or mobilehome installation acceptance requirement, "mobilehome" is defined as any structure "that meets all the [following] requirements . . . and complies with the state standards for mobilehomes in effect at the time of construction": "a structure that was constructed prior to June 15, 1976, is transportable in one or more sections, is eight body feet or more in width, or 40 body feet or more in length, in the traveling mode, or, when erected onsite, is 320 or more square feet, is built on a permanent chassis and designed to be used as a single-family dwelling with or without a foundation system when connected to the required utilities, and includes the plumbing, heating, air conditioning, and electrical systems contained therein." (§ 18008, subd. (a).) Expressly excluded from the definition of mobilehome are commercial modulars, factory-built housing, manufactured homes, multifamily manufactured homes, and recreational vehicles, all as defined by specified statutes. (*Ibid.*) Although *Chodosh I* determined a couple of the mobilehome criteria were clearly satisfied—"'use as a single family dwelling'" and "'with or without a foundation system'"—it noted there was a lack of evidence concerning the square footage criterion.

*Chodosh I* also recognized that fairness to the Association militated a remand for additional proceedings. "Because the [permitting and illegal contract] issue was never properly pleaded by [plaintiffs'] counsel in

7

the answer to the cross-complaint, [the Association] never had the opportunity to assert whatever exceptions to the general rule against the enforcement of illegal contracts might apply." In a footnote, the opinion mentioned one such exception, the in pari delicto exception.

IV.

PROCEEDINGS ON REMAND

On remand, seizing on certain language in the disposition section of *Chodosh I*, the trial court initially limited the factual issues concerning whether the plaintiffs' units were mobilehomes to a single one, namely whether each unit was over 320 square feet. Before trial, however, because of various statutory definitions which it believed might be at play, the court recognized the issues to be resolved might be broader than just square footage. Accordingly, without deciding any legal matters, it indicated it would hear evidence concerning the size of the units and their structure, including, for example, whether each was built on a permanent chassis.

After hearing testimony which primarily concerned the dimensions of each unit, the court took the matter under submission and subsequently issued a written statement of decision which decided certain issues and left others to a later time after the receipt of written briefing from the parties. As for the issues decided, the court determined: (1) gross square footage was the proper calculation for resolving whether a unit was a mobilehome under section 18008; (2) a prior discovery violation by plaintiffs did not preclude them from presenting evidence concerning the relevant square footage; (3) each of the units exceeded 320 square feet; and (4) none of the units qualified as recreational vehicles, as defined by section 18010, because they were not self-propelled, truck-mounted, or permanently towable. Additionally, though the court acknowledged there was no evidence

8

concerning the permanent chassis criterion of the mobilehome definition, it found that criterion irrelevant based on its belief that *Chodosh I* limited the remand to whether the units met the minimum 320 square feet required to be a mobilehome.

Based on those determinations, the court concluded the units "were not [recreational vehicles] and instead f[e]ll within the definition of mobilehome[] found in . . . [section] 18008." It provided the Association the opportunity to file a brief concerning any allegedly applicable exceptions to the general rule against enforcement of illegal contracts and a separate issue raised by the Association concerning the timing of each unit's installation.

After receiving briefs from the parties concerning the outstanding matters, the court issued a written supplement to its prior statement of decision. Therein, it ruled against the Association on the two matters relevant to this appeal: (1) whether there was a viable exception to the general rule of nonenforcement of illegal contracts; and (2) whether the timing of the enactment of the mobilehome permit statutes and regulations affected any issues under consideration by the court. Regarding the former, the court concluded the Association did not meet its burden of showing the in pari delicto exception applied under the circumstances and failed to show unjust enrichment was an exception to the illegal contracts doctrine. Regarding the latter, the court determined the timing of the regulations in relation to installation of each unit was not relevant because California Code of Regulations, title 25, section 1102, subdivision (d), not only obligates a mobilehome park operator to ensure a mobilehome is installed in accordance with the regulations, but also to ensure it is used and maintained in accordance therewith. Separately, the court declined to address various other arguments made by the Association, including unclean hands, the impact of

9

plaintiffs' failure to return consideration upon recission of the promissory notes, and the inapplicability of *Espinoza*, finding those issues fell outside the scope of the remand specified in *Chodosh I*.

Following various additional proceedings, the trial court filed an amended judgment which added resolution of the matters determined following remand to those affirmed by *Chodosh I*. Because the court's remand determinations precluded the Association from recovering unpaid rent from plaintiffs, the court recalculated the total monetary judgment related to each plaintiff.[4] In light of a previously adjudicated attorney fees award in the Association's favor, total monetary judgment related to some plaintiffs was in favor of the Association and for others was against the Association.

The Association timely appealed.[5]

DISCUSSION

The Association contends the trial court committed various errors in determining whether plaintiffs' units were mobilehomes, as defined by section 18008, in evaluating its claimed exceptions to the illegal contracts doctrine, and in concluding there was no other valid basis for requiring plaintiffs to financially compensate the Association for occupying and using the property between the time they stopped paying rent and when they ultimately were removed from the property. We only reach the first issue

---

[4] The court left intact the prior judgment with respect to one plaintiff who is not party to this appeal because no person or personal representative appeared during the remand proceedings to fulfill the burden of showing the unit square footage qualified it as a mobilehome.

[5] Plaintiffs filed a cross-appeal from the amended judgment. It was subsequently dismissed due to plaintiffs' failure to take required steps to pursue appeal.

10

because the record evidences that plaintiffs failed as a matter of law to meet their burden of demonstrating the units qualified as mobilehomes under the applicable statute, which thereby thwarted their attempt to present an affirmative defense to the Association's cross-claim for unpaid rent.

Although not raised as an affirmative defense to the Association's cross-claim for unpaid rent, *Chodosh I* determined plaintiffs could nevertheless try to pursue an illegal contract defense based on the lack of a required certificate of occupancy or mobilehome installation acceptance. If plaintiffs could prove each unit required such a permit, the Association's failure, as the property operator, to ensure the units had the necessary permit would preclude it from recovering unpaid rent under the lease agreements with the plaintiffs unless the Association could prove an exception to the illegal contract defense.

A prerequisite to establishing the illegal contract defense under the circumstances was proving each of the units at issue met the applicable statutory definition of a mobilehome. The Association contends the trial court erred on remand because in concluding plaintiffs' units were mobilehomes, it only made factual findings concerning one of the many criteria needed to qualify as a mobilehome—the gross square footage.[6] Relatedly, it argues the court "did not and would not accept any evidence at [the] hearing on any other statutory factor." We read the record differently on the latter issue, but agree the court erred in evaluating the mobilehome issue.

---

[6] The Association concedes substantial evidence supports the trial court's conclusion that each of the units was greater than 320 square feet in size.

11

In order to qualify as a mobilehome under section 18008, a unit must meet seven specific criteria: (1) is "a structure that was constructed prior to June 15, 1976"; (2) "is transportable in one or more sections"; (3) "is eight body feet or more in width, or 40 body feet or more in length, in the traveling mode, or, when erected onsite, is 320 or more square feet"; (4) "is built on a permanent chassis"; (5) is "designed to be used as a single-family dwelling with or without a foundation system when connected to the required utilities"; (6) "includes the plumbing, heating, air conditioning, and electrical systems"; and (7) "complies with the state standards for mobilehomes in effect at the time of construction." (§ 18008, subd. (a).) *Chodosh I* noted that one of the Association's supplemental briefing responses was that plaintiffs' "units never qualified as 'mobilehomes'" under section 18008 and they, therefore, did not need a certificate of occupancy or mobilehome installation acceptance. The opinion acknowledged that, on the record then before the court, plaintiffs' units met the "use as a single family dwelling with or without a foundation system" criterion. In contrast, one criterion which could not be determined from the record was whether the units were 320 square feet or greater in size, a matter to which even plaintiffs' supplemental briefing in that appeal did not speak.

Although the attention *Chodosh I* gave to the square footage criterion understandably could have led one to perceive it was the only evidentiary issue to be evaluated on remand, the factual matters to be determined were not so limited. Establishing each unit as a mobilehome was plaintiffs' burden because it was part of an affirmative defense to the Association's cross-claim seeking unpaid rent. (See *In re Marriage of Iverson* (1992) 11 Cal.App.4th 1495, 1502 (*Iverson*), disapproved on another ground in *People v. Freeman* (2010) 47 Cal.4th 993, 1006, fn. 4; *Sweeney v. KANS, Inc.*

12

(1966) 247 Cal.App.2d 475, 480 (*Sweeny*).) Because each component of the mobilehome definition concerns a factual matter, and because the mobilehome issue was not raised or litigated during the first trial, plaintiffs were required on remand to provide sufficient evidence to show their units met each of the statutory criteria. *Chodosh I* could not, and did not, make any of those necessary determinations. (See *People v. Contreras* (2015) 237 Cal.App.4th 868, 892 ["[a]ppellate courts do not make factual findings"]; *In re Zeth S.* (2003) 31 Cal.4th 396, 405 ["'it is the province of the trial court to decide questions of fact and of the appellate court to decide questions of law'"].)

By limiting its factual determination on the mobilehome issue to whether plaintiffs' units were 320 square feet or greater, the trial court mistakenly eased the burden on plaintiffs of proving their affirmative defense. While in many situations such an error would necessitate a remand for an additional evidentiary hearing, we do not find remand required here.

During some initial status conferences following the remand by *Chodosh I*, the trial court indicated the evidentiary hearing would be limited to the square footage issue. However, during a later status conference, held just a few months prior to the evidentiary hearing, the court changed course after having "spent some time trying to understand again what the court of appeal want[ed] [done]." More specifically, after discussing passages from *Chodosh I* and the various statutes which define the terms "mobilehome," "recreational vehicle," and "park trailer," the court recognized that factors beyond square footage may end up being relevant. Thus, to be efficient, it decided the hearing would involve any evidence going "to the specific definitions of mobile home, park trailer and recreational vehicle." It clarified this meant it wanted to hear about the square footage issue, whether the

13

units were on a permanent chassis, self-propelled, truck-mounted, or permanently towable, and any other information about their construction that might be relevant to determining their characterization under the various statutes.

Despite having the opportunity to present evidence pertinent to all aspects of the mobilehome definition, plaintiffs did not do so. Most of plaintiffs' testimony concerned the size of their units. None testified about when the units were installed on the property or whether they included plumbing, heating, air conditioning, and electrical systems, and no evidence or argument was offered concerning the state standards for mobilehomes in effect at the time of each unit's construction. Only one plaintiff testified concerning whether her respective unit was transportable in one or more sections; she said there was no way to move it off the property because "it was built from the ground up." Additionally, with respect to whether the units were built on a permanent chassis, there was no evidence they were. One plaintiff testified he "[did] not believe [his unit] was on a chassis due to the nature of the floors," one testified he had "looked kind of under the [unit]" and did not see a chassis, one testified "there may have been [a chassis] on part of [his unit] . . . but [he] didn't go under it," another testified she did not know if her unit had a chassis, another denied having ever looked under his unit, and the remaining testifying plaintiff was not asked about a chassis. On this point, even the trial court's statement of decision acknowledged "[p]laintiffs did not present evidence on [the permanent chassis] mobilehome requirement."

The upshot of what occurred leading up to and during the evidentiary hearing is that plaintiffs were given the opportunity, but failed as a matter of law, to show the units met each statutory factor other than size

14

which is necessary to categorize them as mobilehomes. That failure means plaintiffs did not meet their burden of proof to establish the illegal contract defense and the original judgment should have been reinstated.

Plaintiffs' response to the lack of evidence concerning every mobilehome criteria is twofold. First, they argue "the law of the case" from *Chodosh I* was that nothing more than square footage of the units was at issue on remand. Second, they contend that even assuming the units were not mobilehomes, "[a]ny other dwelling type would require a certificate of occupancy" and, thus, "they had to be another residence type that lacked certificate of occupancy." We reject the first argument for reasons previously stated, and we are not persuaded by the second. Plaintiffs bore the burden of establishing, through facts and the law, an affirmative defense to the Association's cross-claim for unpaid rent. (*In re Marriage of Iverson, supra*, 11 Cal.App.4th at p. 1502; *Sweeney, supra*, 247 Cal.App.2d at p. 480.) Based on *Chodosh I*, for an illegal contract defense grounded in the lack of a required certificate of occupancy or other similar permit, it at minimum required a showing that the units were of a type which required such a permit and the Association had an obligation to obtain or otherwise ensure the units had the necessary permit. Citing a single regulation which mentions issuance of a certificate of occupancy for dwellings and appurtenant structures (Cal. Code Regs., tit. 25, § 116), and offering a conclusory assertion that the units must therefore lack a required certificate of occupancy even if not considered to be mobilehomes, simply does not connect the dots.

Given our conclusion concerning the mobilehome issue, we need not, and therefore do not, reach the Association's remaining arguments which, inter alia, concern whether the trial court erred in allowing plaintiffs to testify about the units' square footage despite discovery violations

15

occurring early in the case, whether it erred in analyzing the in pari delicto exception to the illegal contract doctrine, and whether it unwarrantedly declined to apply principles of unjust enrichment and unclean hands to the circumstances before it.

## DISPOSITION

The judgment is reversed as to the matters decided on remand after *Chodosh I*. On remand, the trial court is directed to vacate the amended judgment entered on October 5, 2022, and to reinstate the original judgment entered on April 14, 2016.  The Association is entitled to costs on appeal.


DELANEY, J.

WE CONCUR:


SANCHEZ, ACTING P. J.


GOODING, J.

16